**The PEOPLE of the State of Colorado, Complainant,**

**v.**

**Sheryl Lynn TUCKER, Attorney–Respondent.**

**No. 95SA257.**

Supreme Court of Colorado, En Banc.

Nov. 14, 1995.

Linda Donnelly, Disciplinary Counsel, and Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

No appearance by Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline proceeding accepted fees from a number of clients and then terminated her legal practice and abandoned her clients. A hearing board recommended that the respondent be disbarred and pay certain restitution. A hearing panel of the supreme court grievance committee approved the board's findings of fact, and its recommendations of disbarment and restitution. The respondent has not appeared in this court. We accept the hearing panel's recommendation.

I.

The respondent was admitted to practice law in Colorado in 1985. Because the respondent unjustifiably failed to comply with the hearing board's discovery order, her answer to the complaint was stricken and a default entered against her on September 26, 1994. C.R.C.P. 37(b)(2), 241.13(b); *People v. Proffitt,* 854 P.2d 787, 787 (Colo.1993). The factual allegations in the complaint were therefore deemed admitted. *Id.* Based on the respondent's default, and evidence tendered by the disciplinary counsel, the hearing board found that the allegations and charges of misconduct contained in the six-count complaint were established by clear and convincing evidence.

The hearing board also concluded that the respondent had decided to cease practicing law by June 1, 1993, and she advertised for someone to take over her office space. By June 10, 1993, the respondent agreed to allow another lawyer to take the office space. By no later than June 20, 1993, the respondent had physically vacated her law offices and had undertaken limited discussions with another lawyer to take over some of her cases. She did not inform her clients that

she had terminated her practice, however, and instructed the receptionist to tell people that she had gone away for only a few weeks. Her abandonment of the practice of law was therefore premeditated.

### A.

In March 1993, David and Elizabeth Wilson hired the respondent to handle a stepparent adoption, and paid the respondent $383 which included the total retainer plus an $83 filing fee. Elizabeth Wilson apparently told the respondent that the biological father of the child was willing to sign the required consent form. Nevertheless, the respondent repeatedly failed to send the consent form to the biological father. After trying a number of times to contact the respondent without success, Elizabeth Wilson called the respondent's office in July 1993 and spoke with the receptionist, who informed her that the respondent was out of town for an indeterminate amount of time, and that the respondent had given the Wilson file to one of the lawyers who shared office space with her.

The respondent gave the Wilson file to another lawyer without the clients' consent, she failed to place the $383 in a client trust account, did not take steps to protect Elizabeth Wilson by the way in which she terminated her practice, failed to notify her clients of her impending departure, did not apply the $83 filing fee (although she did eventually send it to the lawyer who took over the file), and has not refunded the $300 retainer.

The foregoing conduct violated R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to the lawyer); R.P.C. 1.6(a) (a lawyer shall not reveal information relating to representation of a client unless the client consents after consultation); R.P.C. 1.15(a) (fail to hold client funds separate from the lawyer's own funds); R.P.C. 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests); R.P.C. 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 8.4(d) (engage in conduct that is prejudicial to the administration of justice); and R.P.C. 8.4(h) (engage in any other conduct

that adversely reflects on the lawyer's fitness to practice law).

### B.

On June 15, 1993, Bryant S. Harley retained the respondent to file a dissolution of marriage proceeding. He paid her a $300 retainer, and agreed to pay an $88 filing fee no later than July 1, 1993. When Harley learned that the respondent had not sent his wife a waiver of service, he called the respondent's office and was informed that the respondent had left, and that one of the respondent's office associates now had his file. The other lawyer told Harley that the respondent was on a permanent vacation and might not return, and that the $300 he had paid to the respondent was no longer available. The respondent has not refunded the $300.

The respondent's conduct again violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.6(a) (reveal information relating to representation of a client unless the client consents); R.P.C. 1.15(a) (fail to hold client funds separate from the lawyer's own funds); R.P.C. 1.16(d) (fail to take steps to protect a client's interests upon termination of representation); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 8.4(d) (conduct that is prejudicial to the administration of justice); and R.P.C. 8.4(h) (conduct adversely reflecting on fitness to practice).

### C.

Naomi O'Conner hired the respondent on December 28, 1992, to represent her in a dissolution of marriage proceeding filed by her husband, and she paid the respondent a $1,000 retainer. The respondent told her on June 1, 1993, that she was waiting for a response from the husband's lawyer and would be sending out interrogatories.

On June 22, 1993, the husband's lawyer filed a motion to set for permanent orders after being unable to reach the respondent. The lawyer subsequently spoke with O'Conner and advised her to hire new counsel. The receptionist at the respondent's office told O'Conner on July 6, 1993, that the re-

spondent was out of town for an indefinite period of time and that the respondent's clients had been "referred" to another lawyer.

Moreover, the respondent failed to file a response or any other pleading in the O'Conner dissolution proceeding; did not place the $1,000 retainer in a client trust account; closed her law practice without notifying the client, opposing counsel or the court; failed to return O'Conner's file or the unearned retainer, and misrepresented that she was sending out interrogatories. The respondent thereby violated R.P.C. 1.3 (neglect), R.P.C. 1.15(a) (fail to hold client funds separate from the lawyer's own funds); R.P.C. 1.16(d) (fail to take steps to protect a client's interests upon termination of representation); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 8.4(d) (conduct that is prejudicial to the administration of justice); and R.P.C. 8.4(h) (conduct adversely reflecting on fitness to practice).

## D.

Mark D. Hunt paid the respondent a $750 retainer and she began representing him in August 1991 in post-decree matters. The respondent filed a motion to reduce child support in April 1993, and the matter was set for hearing on September 20, 1993.

About June 22, 1993, the respondent called Hunt, who lived in Missouri, and told him that the bookkeeper was demanding a collection on his account, even though the respondent had not sent Hunt any billing statements. The next day, Hunt received the respondent's first billing statement, indicating that he owed $840 as of April 21, 1993. The respondent also told Hunt that she would complete the modification matter for another $200, and it was agreed that Hunt would pay her a total of $1,000 by the end of the month. On June 30, the respondent called Hunt and asked about the $1,000. Hunt said he was trying to get a loan, but the respondent insisted she needed the money that very day. Hunt therefore used a credit card to send the respondent the money by overnight mail.

On August 3, 1993, one of the lawyers sharing office space with the respondent called Hunt and offered to complete the case, estimating that it would take ten hours at $100 per hour to conclude. The lawyer returned Hunt's file at his request and Hunt withdrew the motion to modify and vacated the hearing date. The respondent has not refunded any of the fees that Hunt paid her.

The respondent failed to notify her client or the court that she was withdrawing from the practice of law; gave the client's file to another lawyer without the client's permission; did not deposit the $1,000 retainer in a client trust account; and in fact insisted that Hunt pay additional fees for work to be performed in the future when she knew that she was considering "retirement." The respondent's conduct violated R.P.C. 1.3 (neglect), R.P.C. 1.6(a) (reveal information relating to representation of a client without permission), R.P.C. 1.15(a) (fail to hold client funds separate from the lawyer's own funds); R.P.C. 1.16(d) (fail to take steps to protect a client's interests upon termination of representation); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 8.4(d) (conduct that is prejudicial to the administration of justice); and R.P.C. 8.4(h) (conduct adversely reflecting on fitness to practice).

## E.

The respondent was hired on April 12, 1993, by Stacey Tigue to file a dissolution of marriage petition. Tigue had recently moved to Colorado from Arkansas, where her husband resided. The fee agreement provided that Tigue pay a flat fee of $500 in two installments, which she did by May 2, 1993. The respondent sent a petition and summons to an Arkansas sheriff in the last week of April 1993, but the return of service, received May 10, 1993, reflected that the manner of service was apparently insufficient to effect personal jurisdiction over the husband. The respondent sent the return of service back to the Arkansas sheriff to be notarized. When she filed the petition for dissolution, the respondent did not file the return of service or any other pleadings. No answer to the petition was filed.

Tigue also paid the respondent $300 and $288 on May 14 and May 24, 1993, respectively, to represent her in a DUI case. Tigue's payments to the respondent totalled $1,088. In the DUI case, the respondent appeared with Tigue twice, and spoke with the district attorney to negotiate a plea. When Tigue tried to determine the status of the dissolution proceeding and the DUI case, the respondent did not return her calls.

The respondent failed to advise Tigue of an offer in the DUI case, did not provide her with her file, left the file where another lawyer in the office had access to it without Tigue's consent, and failed to deposit Tigue's retainer in a client trust account. She therefore again violated R.P.C. 1.3, 1.6(a), 1.15(a), 1.16(d), 8.4(c), 8.4(d), and 8.4(h).

### F.

Shelly Myers retained the respondent in June 1993 to represent her in a dissolution of marriage proceeding that her husband had filed. The husband asked for custody of their minor child in the petition. The respondent agreed to handle the matter for $500. Myers paid her the $500 by June 11, 1993, and, according to Myers, the respondent promised to get the custody request "quashed."

The respondent failed to file an answer or any other pleading after having accepted service for her client, she left the Myers file with another lawyer without the client's consent, did not place the $500 in a trust account, did not notify the client or opposing counsel of her withdrawal from the matter, and misrepresented that she had filed a motion to quash and was seeking to have a hearing date set. She did not refund the $500. The respondent once more violated R.P.C. 1.3, 1.6(a), 1.15(a), 1.16(d), 8.4(c), 8.4(d), and 8.4(h).

### II.

█ The hearing panel approved the board's recommendation that the respondent be disbarred. The respondent has not excepted to the panel's action or otherwise appeared in this court.

The respondent abandoned her clients while continuing to collect attorney fees for work that would not be performed. Nor has she returned the unearned fees. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (ABA *Standards*), in the absence of mitigating factors, disbarment is generally appropriate when:

> (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
>
> (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
>
> (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41. *See, e.g., People v. Fritsche*, 897 P.2d 805, 806–07 (Colo.1995) (lawyer who effectively abandoned clients and disregarded disciplinary proceedings was disbarred rather than suspended); *People v. Williams*, 845 P.2d 1150, 1152 (Colo.1993) (disbarment warranted when lawyer neglects legal matter, fails to return client's retainer, evades service of process, fails to respond to request for investigation, and abandons practice); *People v. Ashley*, 817 P.2d 965, 965–66 (Colo.1991) (lawyer disbarred for agreeing to represent clients in five separate matters, accepting retainers and advances for court costs while performing virtually no services for the clients, then refusing further communication with the clients).

Because the respondent's answer was stricken and she did not attend the hearing before the board, no mitigating circumstances were found except for the absence of prior discipline. ABA *Standards* 9.32(a). Factors in aggravation include a dishonest or selfish motive, *id.* at 9.22(b); a pattern of misconduct, *id.* at 9.22(c); multiple offenses, *id.* at 9.22(d); bad faith obstruction of the disciplinary process, *id.* at 9.22(e); refusal to acknowledge the wrongful nature of her conduct, *id.* at 9.22(g); the vulnerability of the victims, *id.* at 9.22(h); substantial experience in the practice of law, *id.* at 9.22(i); and indifference to making restitution, *id.* at 9.22(j).

Disbarment is the only suitable sanction in this case. The panel also approved the board's recommendation that the respondent make certain restitution to her clients. We agree, and therefore order that, prior to any application for readmission, the respondent must demonstrate that she has made the restitution provided for below. The condition that the respondent provide restitution is in addition to any other remedies at law that the respondent's former clients may pursue.

### III.

It is hereby ordered that Sheryl Lynn Tucker be disbarred and that her name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after the date on this opinion. It is further ordered that, prior to any application for readmission, the respondent make the following restitution:

(1) $300 plus statutory interest from March 31, 1993, to David and Elizabeth Wilson;

(2) $300 plus statutory interest from June 15, 1993, to Bryant S. Harley;

(3) $1,000 plus statutory interest from December 28, 1992, to Naomi O'Conner;

(4) $1,750 plus statutory interest from June 30, 1993 to Mark D. Hunt;

(5) $1,088 plus statutory interest from May 24, 1993, to Stacey Tigue;

(6) $500 plus statutory interest from June 11, 1993, to Shelly Myers.

It is further ordered that the respondent pay the costs of this proceeding in the amount of $129.09 within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.