**The PEOPLE of the State of Colorado, Complainant,**

v.

**Peter L. JENKS, Attorney–Respondent.**

**No. 95SA422.**

Supreme Court of Colorado, En Banc.

Feb. 12, 1996.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Assistant Disciplinary Counsel, Denver, for Complainant.

Peter L. Jenks, Boulder, pro se.

PER CURIAM.

An inquiry panel of the supreme court grievance committee approved a stipulation, agreement, and conditional admission of misconduct between the respondent and the assistant disciplinary counsel, C.R.C.P. 241.18, which recommended that the respondent be disbarred for abandoning a number of clients and neglecting legal matters. We accept the conditional admission and the recommendation.

I

The respondent was admitted to the Colorado bar in 1989. He was immediately suspended from the practice of law on January 23, 1995, pending resolution of the charges addressed in this proceeding. The conditional admission contained the following stipulations:

A

The respondent agreed to take over a foreclosure action on behalf of Annette Novak in July 1992, and to work from the $600 retainer she had paid to the respondent's partner. The respondent failed to answer his client's calls from July 1992 to October 1993, however, and his telephone was disconnected in September 1993. The foregoing conduct violated DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer); DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of the lawyer's client through reasonably available means); and DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client). After January 1, 1993, the effective date of the Rules of Professional Conduct, the respondent violated R.P.C. 1.3 (failure to act with reasonable diligence).

B

Lisa M. Riecks hired the respondent in January 1994 to investigate a possible bad faith claim against an administrative service company for refusing to pay for medical treatment performed on Riecks in 1993. She paid the respondent a $500 retainer which, according to the written fee agreement, was "non-refundable." The respondent sent letters of representation to the administrative service company and treating physicians, but, starting in February 1994, Riecks had great difficulty in reaching the respondent and finally, in April 1994, she sent the respondent a certified letter requesting her entire file and affidavits signed by her physicians. The respondent did not answer or comply with her demand.

The respondent's conduct violated R.P.C. 1.3 (failure to act with reasonable diligence), and R.P.C. 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

C

The respondent retained Raymond Smith in November 1991 to reconstruct and investigate an automobile accident on behalf of the respondent's client. The investigative work was completed on November 27, 1991, and Smith sent a bill to the respondent in the amount of $767.50. Although the respondent did not dispute the amount of the bill and said that he would pay it, he has not done so. Smith's bill remains unpaid with total charges amounting to $1,080.93 at the time of the conditional admission. The above conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); as well as DR 1–102(A)(5) and R.P.C. 8.4(d) (a lawyer shall not engage in conduct prejudicial to the administration of justice).

D

Shirley Shultz retained the respondent on June 21, 1992, to assist her in a civil action against her homeowners' insurance company for failure to pay for roof damage. She agreed to pay the respondent a $1,000 flat fee if the matter was settled, or a one-third contingency fee if the case went to trial. The insurer made a written offer of $5,400 on December 15, 1992, which Shultz rejected. The respondent was directed to continue negotiations.

Shultz then had problems reaching the respondent, although when she did, he assured her he was working on the case. In early 1993, however, Shultz was no longer able to contact him and she discovered that he had moved from his office and left no forwarding address.

The insurer told Shultz's daughter that it was too late to reach a settlement because the civil action had been dismissed with prejudice for failure to prosecute on July 7, 1993. At a meeting in January 1994 with Shultz, the respondent admitted that her case had been lost due to his negligence. He agreed to refund her $500 retainer and filing fees, and to find out whether she could cash two small settlement checks in her possession from the insurer. The respondent did none of these things, and Shultz repaired her roof at a cost of $2,800 with no contribution from the insurer.

As the respondent has stipulated, the above conduct violated DR 1–102(A)(4) and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6–101(A)(3) and R.P.C. 1.3 (neglect a legal matter); R.P.C. 1.4(a) (fail to communicate with a client); DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of the lawyer's client through reasonably available means); DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client); and DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship).

E

Patricia L. Annis went to an emergency room in Colorado Springs on September 18, 1993, and because of a determination that she was suicidal, among other things, a physician placed a seventy-two hour hold on her. She was ultimately transferred to the Colorado State Hospital in Pueblo. The next day, she called a lawyer referral service that gave her the respondent's name as a lawyer who had "substantial experience" in mental health cases.

The respondent agreed to work for her release, and Annis arranged for her son to wire $1,500 to the respondent from California. Although there was no written fee agreement, Annis believed that the respondent would establish an account on her behalf with the $1,500 from which he would bill her for legal services. Annis also indicates that the respondent told her that the $1,500 fee was a "non-refundable" retainer. The respondent did nothing to obtain her release. Annis was ultimately released on September 24, 1993, because of the intercession of one of her friends.

Annis met with the respondent after her release and the respondent agreed to send $165 from the $1,500 to a physician so that Annis could receive an independent psychiatric evaluation. As a result of the respondent's failure to promptly pay the $165 and other delays, Annis sent the respondent a letter terminating his legal services, and asking for a refund of $1,000. The respondent told her on the telephone that he had used all but $135 of the retainer, but has never given Annis an accounting of his services, and has not refunded any money to her.

The above conduct violated R.P.C. 1.4(a) (fail to communicate with a client), and R.P.C. 1.15(b) (a lawyer shall promptly deliver to the client or third person any funds that the client or third person is entitled to receive and, upon request, render a full accounting).

F

On September 1, 1992, Lila Guildner hired the respondent to seek the release of her son from the Colorado State Mental Hospital in

Pueblo. She signed a written fee agreement the same day which provided for a $10,000 "non-refundable" retainer and an hourly rate of $125.

The respondent visited the son twice; once in October 1992 and again in February 1993. He also obtained a medical report at a cost of $94.29. The respondent sent Guildner a letter on February 21, 1993, outlining the steps the respondent would be taking to secure the release of her son. Following this letter, however, Guildner has had no further contact with the respondent. Her October 1, 1993, letter to the respondent was returned by the post office noting that the respondent's change of address had expired.

The respondent's conduct violated DR 2–106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee); R.P.C. 1.5(a) (a lawyer's fee shall be reasonable); DR 6–101(A)(3) and R.P.C. 1.3 (neglect a legal matter); R.P.C. 1.4(a) (fail to communicate with a client); DR 7–101(A)(1) (intentionally fail to seek the client's lawful objectives); DR 7–101(A)(2) (intentionally fail to carry out a contract of employment); and DR 7–101(A)(3) (intentionally prejudice or damage the lawyer's client).

## G

The respondent failed to respond to the request for investigation in each of the foregoing matters, contrary to C.R.C.P. 241.6(7) (fail to respond to a request by the grievance committee without good cause shown, or obstruction of the committee or any part thereof in the performance of its duties).

## H

Marjorie Taylor–Jones paid the respondent $250 in November 1993 to form a corporation for her. Although the respondent repeatedly told her that he had formed the corporation, he never did. Taylor–Jones discovered that no such entity had been formed when she contacted the Secretary of State. The respondent has not refunded any money to Taylor–Jones, although she has asked for one. The foregoing conduct violated R.P.C. 1.3 (neglect a legal matter), R.P.C. 1.4(a) (fail

to communicate with a client), and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

## I

Suzanne Williams was referred to the respondent regarding an out-of-state automobile transaction in which she believed she was defrauded. The respondent advised her that she had a "great" case and that he could obtain a settlement of approximately $24,000.

Williams paid the respondent a $500 retainer in February 1994 as he requested, and then experienced difficulties in contacting him again. On December 5, 1994 she did reach him and told him that she thought the statute of limitations would run on her claim on December 28, 1994. She asked for a return of her documents and retainer. Williams never heard anything further from the respondent.

As the respondent admitted, his conduct violated R.P.C. 1.3 (neglect a legal matter), R.P.C. 1.4(a) (fail to communicate with a client), and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

## J

Cecil and Loretta Falls retained the respondent in March 1993 to represent them in a claim against their insurer for hail damage to their residence in August 1992. They gave the respondent a $1,500 retainer on March 24, 1993, as well as photographs of their damaged roof and repair estimates. They agreed that the respondent would receive one-third of any settlement proceeds he recovered from the insurer. They were not able to communicate thereafter with the respondent until they found his name in the Boulder telephone book and went to visit him at home on December 1, 1994. The respondent promised to meet with their insurer within a week, but the respondent never contacted them again. The respondent thereby violated R.P.C. 1.3 (neglect a legal matter), R.P.C. 1.4(a) (fail to communicate with a client), and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

## II

The respondent and the assistant disciplinary counsel submit that disbarment is appropriate in this case. The inquiry panel agreed, and so do we. The respondent accepted fees from a number of clients, then abandoned them, causing some of his clients substantial harm. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), in the absence of mitigating factors, disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41. *See, e.g., People v. Tucker,* 904 P.2d 1321, 1325 (Colo.1995) (lawyer who abandoned her clients while continuing to collect attorney fees for work that would not be performed was disbarred); *People v. Fritsche,* 897 P.2d 805, 806–07 (Colo.1995) (lawyer who effectively abandoned clients and disregarded disciplinary proceedings was disbarred rather than suspended). The respondent has consented to disbarment and neither of the parties has presented mitigating evidence that would make a lesser sanction appropriate. We therefore accept the conditional admission and the inquiry panel's recommendation.[1]

## III

It is hereby ordered that Peter L. Jenks be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately. It is further ordered that Jenks pay the costs of this proceeding in the amount of $149.75 within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.

---

1. Neither the inquiry panel's report nor the body of the conditional admission itself mentions restitution. However, an unsigned addendum to the conditional admission recommends that the respondent be ordered to make restitution "prior to reinstatement [sic]" as follows:

   Annette Novak of $600 with interest from July, 1992; Lisa Riecks of $500 with interest from January, 1994; Raymond Smith of $1,080.93 with interest from November, 1993; Shirley Shultz of $500 with interest from June, 1992; Patricia Annis of $1,335 with interest from September, 1993; Lila Guildner of $9,905.71 with interest from September, 1992; Marjorie

   Taylor–Jones of $250 with interest from November, 1993; Suzanne Williams of $500 with interest from February, 1994; and Cecil and Loretta Falls of $1,500 from March, 1993.

   Given the absence of a recommendation as to restitution in the inquiry panel's report, we decline to affirmatively order that the above restitution be performed. Should the respondent ever attempt to be readmitted to the Colorado bar, however, his efforts with respect to restitution will be a substantial factor in determining whether he has demonstrated his rehabilitation by clear and convincing evidence. C.R.C.P. 241.22(a).