**The PEOPLE of the State of Colorado, Complainant,**

v.

**Thomas T. JAMROZEK, Attorney–Respondent.**

**Nos. 95SA100, 96SA35.**

Supreme Court of Colorado, En Banc.

April 8, 1996.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

No appearance by Attorney–Respondent.

PER CURIAM.

The respondent in these two consolidated lawyer discipline proceedings, Thomas T. Jamrozek, has not appeared in any of the proceedings before the Supreme Court Grievance Committee, the hearing boards, or this court. The hearing board in case No. 95SA100 recommended that the respondent be suspended from the practice of law for sixty days and be required to petition for reinstatement in addition to certain other conditions. A hearing panel of the grievance committee approved the hearing board's findings and recommendations. While case No. 95SA100 was pending before the court, the assistant disciplinary counsel filed a motion to hold that proceeding in abeyance until other separate disciplinary proceedings pending before the grievance committee were completed. On December 8, 1995, the same hearing panel approved the findings and recommendation of a second hearing board that the respondent be disbarred and be required to make specified restitution. Having consolidated the two proceedings, we accept the panel's recommendation that the respondent be disbarred and order that he make certain restitution prior to any application for readmission.

I

The respondent was admitted to practice law in Colorado in 1986. He was suspended from the practice of law on March 29, 1995, based on the disciplinary charges contained in these proceedings. C.R.C.P. 241.8. Those charges include five formal complaints.

Because he did not appear before the hearing board in either of these consolidated proceedings, the allegations of fact contained in all of the complaints were deemed admitted. C.R.C.P. 241.13(b); *People v. Barr*, 855 P.2d 1386, 1386 (Colo.1993). The hearing boards found that the following facts had been established by clear and convincing evidence.

## II

### No. 95SA100

#### A

In July 1992, Audra Hill drove a used vehicle that she desired to purchase to an automotive shop for an inspection. When the automotive shop gave the vehicle a clean bill of health, Hill and her mother, Beverly, purchased the vehicle for $2,400. Shortly afterwards the vehicle repeatedly broke down, requiring expenditures for towing services and repairs. The Hills took the vehicle to an independent mechanic, who advised them that the engine was beyond repair and that the vehicle had been involved in a wreck. The automotive shop had diagnosed none of these conditions.

On July 31, 1992, the respondent agreed to represent the Hills in an action against the automotive shop. Beverly Hill paid the respondent $25. The Hills agreed to pay the respondent $120 per hour and to pay a monthly minimum of $120.

The respondent wrote to Beverly Hill on August 6, 1992, outlining the fee agreement and stating that the Hills had "a colorable claim against" the automotive shop. He enclosed a copy of the Colorado Motor Vehicle Repair Act of 1977, now codified at sections 42-9-101 to 42-9-108, 17 C.R.S. (1995 Supp.). The respondent also asked for more information and an additional $120. Beverly Hill paid that sum to the respondent on September 4, 1992.

The respondent wrote a letter on October 30, 1992, to the manager of the automotive shop demanding payment to the Hills of $2,792.88 in actual damages plus $500 in attorney fees and stating that litigation would be initiated if the shop did not respond in ten days. The automotive shop referred the letter to its Illinois counsel, who on November 18, 1992, offered to reimburse the respondent's client for their actual repair costs of $342.88.

Beverly Hill sent an additional sum of $120 to the respondent on November 24, 1992, and the respondent sent a copy of the automotive shop's response to Audra Hill. In his letter, the respondent outlined Hill's options, and he advised her to make a counter-offer. Audra Hill agreed to do so and stated that she hoped the counter-offer would cover the cost of repairs "plus [the respondent's] fees." Beverly Hill sent the respondent another $120 payment on January 1, 1993, and asked about the status of the case. The respondent did not respond to the Hills' requests for information and did not return their telephone calls. The hearing board determined that the Hills' claim is now time-barred. The respondent has not returned any portion of the $505 paid to him by the Hills.

The respondent's conduct, which occurred both before and after the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 6-101(A)(3), R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to the lawyer), and R.P.C. 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

#### B

Robert Headrick hired the respondent on April 23, 1994, to represent him in a pending driving under the influence matter. Headrick paid the respondent the requested fee of $750; however, a few days later Headrick decided to retain another lawyer. He telephoned the respondent and left a message on the respondent's answering machine that he no longer needed the respondent's services. Headrick attempted to call the respondent again on May 2, 1994, both at the respondent's office and home, but the respondent's telephone numbers had been disconnected. Headrick wrote the respondent twice in May requesting a refund of the $750. On June 1, 1994, the respondent sent Headrick a bill for his services which showed that the retainer

was exhausted and that Headrick owed the respondent an additional $8.70.

The hearing board concluded that the respondent failed to refund Headrick's retainer even though he did nothing substantive or beneficial for his client. His conduct therefore violated R.P.C. 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as refunding any advance payment of fee that has not been earned); R.P.C. 8.4(g) (engaging in conduct which violates accepted standards of legal ethics); and R.P.C. 8.4(h) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Moreover, because the respondent failed to respond to the request for investigation filed in the Headrick matter, he violated C.R.C.P. 241.6(7) (failure to respond to a request by the grievance committee without good cause shown, or obstruction of the committee or any part thereof in the performance of its duties constitutes ground for lawyer discipline).

## III

### No. 96SA35

### A

Lonnie B. Brummit and a co-defendant hired the respondent in 1992 to defend them in a civil action involving disputed dry cleaning charges. On February 14, 1994, judgment was entered against Brummit and his co-defendant for $3,773.68, including interest. The co-defendant paid $1,659.48 towards the judgment on February 23, 1994, through the respondent. Brummit sent the respondent a check for $1,200 on March 2, 1994, to forward to the opposing counsel. Brummit indicated that he expected a tax refund at the end of April from which he could pay $459.48, the remaining balance he believed due on the judgment. The respondent forwarded the $1,200 to the opposing counsel the next day. On April 18, 1994, the opposing counsel sent a letter to the respondent stating that the balance due was $914.20, not $459.48. However, the respondent did not convey this information to Brummit. Brummit brought the respondent a check for $459.48 on April 28, 1994, and asked him to send it to the

opposing counsel. The respondent deposited the check into his trust account on or about May 2, 1994, but did not forward it to the opposing counsel.

Brummit was not able to reach the respondent after this, nor was the opposing counsel. Brummit therefore called the opposing counsel, who informed Brummit of the status of the judgment. Brummit then sent a certified letter to the respondent demanding that the respondent send $459.48 to the opposing counsel. Brummit ultimately made other arrangements to satisfy the judgment. On October 25, 1994, almost six months after he had received the funds, the respondent tendered a check to the Office of Disciplinary Counsel for $459.48, payable to Brummit.

The foregoing conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); R.P.C. 1.15(b) (failure to promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive); and R.P.C. 1.16(d) (failure to take reasonable practicable steps to protect the client's interests upon termination of representation).

### B

James A. Easley was injured in an automobile accident in August 1992, and was initially cited as being at fault. The respondent represented Easley in a jury trial involving the citation Easley had received as a result of the accident and Easley was acquitted. The respondent also agreed to represent Easley in pursuing a civil claim against the driver of the other automobile involved in the accident on a one-third contingency fee basis. Moreover, when Easley's insurer tried to raise his automobile insurance rates, Easley retained the respondent and paid him $250 to file an objection and to represent him before the state insurance commissioner.

The insurer did not appear at an administrative hearing held on March 17, 1993, and the presiding officer ruled in Easley's favor. The respondent did not request that attorney fees be awarded, although he had promised

Easley that he would do so and would refund the $250 if the request were granted. Because the respondent did not request the attorney fees at the hearing or within forty-five days thereof by means of a request to reopen, no attorney fees were awarded. The hearing officer indicated that such a request in a case like that would have been granted.

Thereafter, Easley was not able to contact the respondent. However, in late fall of 1993 Easley by coincidence encountered the respondent at a bar. The respondent told Easley that Easley's cases were "going along all right" but that the respondent did not have time to discuss them then. The respondent directed Easley to call the respondent at the respondent's office. Easley tried on several occasions to reach the respondent by telephone at the respondent's office, but was unable to do so. Sometime later, the respondent's office and home telephone numbers were disconnected. Easley has not heard from the respondent since the chance meeting at the bar in 1993, and the respondent has not returned Easley's papers or files. Easley has expended $19 in replacing certain of the papers that respondent did not return.

The above conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to keep a client reasonably informed about the status of a matter); R.P.C. 1.16(d) (failure to take reasonable practicable steps to protect the client's interests upon termination of representation); R.P.C. 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and R.P.C. 8.4(h) (conduct adversely reflecting on fitness to practice law). Further, because he did not respond to the request for investigation filed in this matter, he again violated C.R.C.P. 241.6(7).

### C

The respondent was hired by Linda K. Haney on February 22, 1994, to file a notice of intent to file a mechanic's lien. She paid the respondent $250 and delivered necessary documents to him two days later. The respondent represented that he would begin work on her case immediately; however, each time she questioned him about it, he admitted that he had done no work on her case. Haney therefore fired the respondent, hired another lawyer, and requested the respondent to refund her retainer and return her file. Although the respondent returned Haney's file on March 17, 1994, he has not refunded the $250 retainer fee or otherwise provided an accounting. The respondent's conduct in this matter violated R.P.C. 1.3 (neglect of a legal matter) and R.P.C. 1.16(d) (failure to take reasonable practicable steps to protect the client's interests upon termination of representation, such as refunding any advance payment of fee that has not been earned).

The respondent did not respond to the request for investigation filed in the Haney matter, contrary to C.R.C.P. 241.6(7). In addition, the respondent told the Office of Disciplinary Counsel on October 25, 1994, that he had closed his law office and was working out of his home. The respondent has not notified the clerk of the supreme court of this change of address, however, as required by C.R.C.P. 227(A)(2)(b).

### D

On September 14, 1994, Richard S. Adams executed a fee agreement and paid the respondent $750 to represent him in several criminal matters. Adams paid the respondent an additional $500 on September 21, 1994. Neither payment was placed in an account separate from the respondent's own account. One week before his first scheduled hearing, however, Adams discovered that the respondent's office telephone had been disconnected. When he went to the respondent's office, the receptionist told him that no one had seen the respondent and that the respondent was going to move out of his office in the near future.

Adams contacted another lawyer who knew the respondent and obtained the respondent's home telephone number from her. The person who answered Adams' telephone call to that number informed Adams that the respondent no longer lived there. Adams then hired the other lawyer to defend him.

In October 1994, Adams sent the respondent a letter requesting the return of the $1,250 retainer. His new lawyer sent a re-

quest for a refund to the respondent in December 1994. The respondent has not replied to either request and has not refunded any of the $1,250 to Adams. The hearing board found that the foregoing conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to keep a client reasonably informed about the status of a matter); R.P.C. 1.5(a) (charging an unreasonable fee); R.P.C. 1.15(a) (failure to maintain client funds in a separate account); R.P.C. 1.16(d) (failure to take reasonable practicable steps to protect the client's interests upon termination of representation, such as refunding any advance payment of fee that has not been earned); and R.P.C. 8.4(h) (engaging in conduct adversely reflecting on fitness to practice law).

## IV

The hearing board in case No. 95SA100 recommended a sixty-day suspension, restitution, and a requirement that the respondent petition for reinstatement. In case No. 96SA35, the board recommended that the respondent be disbarred and pay restitution to his former clients. As in *People v. Jenks,* 910 P.2d 688, 692 (Colo.1996), in which we disbarred the lawyer-respondent, "[t]he respondent accepted fees from a number of clients, then abandoned them, causing some of his clients substantial harm." The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) provides that, in the absence of mitigating factors, disbarment is appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41. *See, e.g., People v. Tucker,* 904 P.2d 1321, 1325 (Colo.1995) (lawyer who abandoned her clients while continuing to collect attorney fees for work that would not be performed disbarred); *People v. Fritsche,* 897 P.2d 805, 806–07 (Colo.1995)

(lawyer who effectively abandoned clients and disregarded disciplinary proceedings disbarred). The sole mitigating factor found by either hearing board was that the respondent has not been previously disciplined. ABA *Standards* 9.32(a). In view of the extent of the respondent's misconduct, the absence of prior discipline is not in itself sufficient to justify a sanction less than disbarment. *See, e.g., Tucker,* 904 P.2d at 1325–26. Accordingly, we accept the hearing panel's recommendation that the respondent be disbarred. We also accept the recommendation that restitution be ordered in both cases.

## V

It is hereby ordered that Thomas T. Jamrozek be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately. It is further ordered that, prior to any application for readmission, the respondent make the following restitution:

(1) $505 plus statutory interest from January 1, 1993, to Audra Hill and Beverly Hill;

(2) $750 plus statutory interest from April 23, 1994, to Robert Headrick;

(3) $269 plus statutory interest from March 17, 1993, to James A. Easley;

(4) $250 plus statutory interest from February 22, 1994, to Linda K. Haney; and

(5) $1,250 plus statutory interest from September 21, 1994, to Richard S. Adams.

It is further ordered that the respondent pay the combined costs of these proceedings in the amount of $307.98 within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600—17th Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202–5435.