**The PEOPLE of the State of Colorado, Complainant,**

v.

**Timothy Paul McCAFFREY, Attorney–Respondent.**

**No. 96SA258.**

Supreme Court of Colorado,
En Banc.

Oct. 15, 1996.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Assistant Disciplinary Counsel, Denver, for Complainant.

Timothy Paul McCaffrey, Las Vegas, NV, pro se.

PER CURIAM.

The respondent in this lawyer discipline case was convicted of two felonies and seri-

ously neglected three client matters. A hearing panel of the supreme court grievance committee approved the findings and recommendations of the hearing board that the respondent be suspended for three years and that certain conditions be imposed on any future reinstatement. It is a close question whether a three-year suspension is adequate, or whether disbarment is the more appropriate sanction, but we have decided to accept the panel's and board's recommendations.

## I

The respondent was admitted to practice law in Colorado in 1982. Three formal complaints against the respondent were consolidated for one hearing. Because the respondent did not answer the complaints, a default was entered against him, and the allegations of fact contained in the complaints were deemed admitted. C.R.C.P. 241.13(b); *People v. Barr*, 855 P.2d 1386, 1386 (Colo.1993). Based on the respondent's default and the evidence presented, the hearing board found that the following had been established by clear and convincing evidence.

## A

Three separate felony cases were filed against the respondent in El Paso County. The first, No. 94CR2758, charged the respondent with first degree criminal trespass, § 18–4–502, 8B C.R.S. (1996 Supp.), a class 5 felony; and harassment, § 18–9–111, 8B C.R.S. (1996 Supp.), a class 3 misdemeanor. The victim was the respondent's former girlfriend, who stated that at about 6:00 a.m. on August 5, 1994, the respondent entered the home of her brother-in-law, where she resides, without consent and in an extremely agitated state, and harassed her inside the home with repeated offensive language.

The second case, No. 94CR2882, alleged the use of a schedule II controlled substance, § 18–18–404(1)(a), 8B C.R.S. (1996 Supp.), a class 5 felony. On or about August 22, 1994, the respondent took his eighteen-month-old daughter to a hospital in Colorado Springs, claiming that she had been sexually assaulted.

The child was examined at the hospital and it was determined that there had not been any sexual or physical assault to the child. During the course of the investigation, two officers from the Colorado Springs Police Department, along with a physician and a nurse at the hospital, observed that the respondent was behaving in a bizarre and aberrant manner.

The respondent continually changed his story about the sexual assault. At one time, he said that his former girlfriend was involved in a cult sex group that acted upon subliminal or unconscious suggestions. He also stated that he believed that his home had been changed structurally and that he was having contractors come out to verify this. He told the officers that there are three or four rooms in the walls of his residence that he is aware of, and that there is access to and from his house other than the normal access. He stated that he continually hears noises as if people are walking in and out of the walls.

The respondent indicated that he believed that the cult group was mentally tormenting him to aid in his separation from his ex-girlfriend. He also heard unusual sounds in his home and that he observed 2,000 to 2,500 drywall nails missing from the walls of the home, and that the ceilings had been lowered in his closets. According to the respondent, the texture material from the ceiling had started to fall onto the carpet in his home, and he had seen pinholes in the walls that were not there before he had separated from his girlfriend.

The physician at the hospital believed at the time that the respondent's delusions could have been caused by cocaine or amphetamine withdrawal. Based on their observations, the police officers stated in their reports that the respondent appeared to be withdrawing from some type of narcotic. Further, the officers saw scratches on the respondent's legs, which he told them were due to the bugs crawling on him. Throughout his conversation with the police, the respondent continued to scratch and appeared in a paranoid state. On August 26, 1994, drug tests of the respondent's urine revealed the presence of cocaine.

The third case, No. 94CR2805, charged the respondent with criminal mischief in violation of section 18–4–501, 8B C.R.S. (1996 Supp.), a class 4 felony based on the amount of damage; and prohibited use of weapons, § 18–12–106, 8B C.R.S. (1986), a class 2 misdemeanor. Several witnesses telephoned the Colorado Springs Police Department on August 28, 1994, to report a man firing gunshots in a residential area. The respondent was arrested shortly afterwards in the immediate area. A shotgun was found in his vehicle and shells were found in his pockets when the police confronted him. There was damage caused by a shotgun to an office complex and a motor vehicle in excess of $1,000.

The respondent told the police at the scene that he was carrying a shotgun because numerous people had been driving up and down the street over the weekend hollering at him and that he felt extremely threatened. He also admitted that he used cocaine and intended to pursue drug therapy because of his drug habit. The respondent told them of possible cult activity at the church his girlfriend attended and that there might be some type of sexual assaults involving his child going on at the church.

On or about April 21, 1995, the respondent pleaded guilty to first degree criminal trespass, a class 5 felony, and he was sentenced to three years supervised probation with conditions including drug evaluation and treatment, mental health evaluation and treatment, and a thirty-six week domestic violence program. The respondent also pleaded guilty to the unlawful use of a schedule II substance and received a deferred sentence for a term of three years probation in conjunction with the criminal trespass sentence. The third criminal charge, criminal mischief, was dismissed in consideration of the respondent's guilty pleas and his payment of restitution.

The hearing board concluded that the above conduct violated R.P.C. 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); and R.P.C. 8.4(h) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law).

## B

On August 16, 1990, Blanche Thompson was injured in an automobile accident in which her husband, John Thompson, was driving. She retained the respondent about August 8, 1991, to represent her in her personal injury claim against State Farm Insurance Company.

The respondent wrote State Farm a letter on March 4, 1993, in an attempt to engage in settlement negotiations. State Farm made an offer of $15,000 on July 30, 1993, which Thompson rejected on the advice of the respondent. On November 19, 1993, the respondent filed a complaint in the personal injury matter.

Without his client's knowledge or authorization the respondent wrote to State Farm on February 9, 1994, offering to settle the claim for $15,000. Two days later, State Farm sent a letter to the respondent notifying him that their original $15,000 offer was withdrawn since the statute of limitations had run on Thompson's claim on August 16, 1993.

Thompson could not reach the respondent during the summer of 1994. In September 1994, she fired the respondent and hired another lawyer to represent her. The new lawyer was unable to contact the respondent either, and, after State Farm filed a motion for summary judgment, the lawyer could only respond that he had no basis to object to the statute of limitations defense. The trial court granted State Farm's motion for summary judgment on January 23, 1995.

The foregoing conduct, which occurred before and after the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 6–101(A)(3) and R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to the lawyer); DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client); DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship); R.P.C. 1.2(a) (a lawyer

shall abide by a client's decisions concerning the objectives of representation and shall abide by a client's decision whether to accept an offer of settlement of a matter); R.P.C. 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation), and C.R.C.P. 241.6(4) (a lawyer shall not commit any act or omission which constitutes gross negligence, if committed by the lawyer in the capacity of a lawyer). Because he did not respond to the request for investigation in the Thompson matter, he also violated C.R.C.P. 241.6(7) (failure to respond to a request by the grievance committee without good cause shown).

## C

In January 1993, Brenda Schroeder and her husband William Schroeder retained the respondent to represent them in a personal injury claim, including the payment of Ms. Schroeder's medical bills arising from an automobile accident in Pueblo, Colorado, on March 24, 1992. The Schroeders signed a contingent fee agreement authorizing the respondent to retain one-third of the damages recovered as his fee.

A dispute arose because Ms. Schroeder's insurance company, GEICO, was refusing to pay for medical treatment recommended by a rehabilitation specialist assigned to her case. The respondent persuaded GEICO to remove the rehabilitation specialist and to approve the necessary medical treatment.

Between March and July 1993, the respondent told the Schroeders that he had filed a civil case for damages arising from the automobile accident when, in fact, he had not. The respondent later stated that he had been attempting to serve the driver of the automobile with a complaint in order to initiate the case.

In March 1994, Ms. Schroeder discovered that the respondent had neither prepared nor filed a complaint on her behalf. The respondent would not return the Schroeders' forty-one phone calls after March 1994, nor would he come to scheduled meetings with them. The respondent's secretary suggested that they hire another lawyer, and in August 1994 they obtained their file with the secretary's help. They consulted a lawyer who declined to represent them but told them that the statute of limitations would run on their claim on March 24, 1995.

Mr. Schroeder, who is a relatively sophisticated client, communicated directly with the claims adjuster and negotiated a $45,000 settlement in September or October 1994. GEICO has continued to pay for Ms. Schroeder's medical treatment through her PIP benefit coverage.

The above conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4 (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information to permit the client to make informed decisions regarding the representation); and R.P.C. 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation). Because he did not respond to the request for investigation in the Schroeder matter, respondent again violated C.R.C.P. 241.6(7).

## D

Shelby Franks retained the respondent to represent her in a personal injury action arising from an automobile accident that occurred in Colorado Springs on March 27, 1991. The respondent filed a complaint on March 18, 1994, and obtained service on the defendant on April 9, 1994. On April 19, 1994, the defendant's counsel filed a motion for cost bond, which the court granted on June 28, 1994. The court ordered Franks to post a cost bond in the amount of $1,500. The respondent did not notify Franks of the cost bond requirement, and no bond was filed. The defendant moved to dismiss the case on August 4, 1994. After no response was received from Franks or from the respondent on Franks's behalf, the court dismissed the case without prejudice on October 18, 1994.

On December 18, 1994, Franks's new lawyer entered his appearance and filed a motion to set the dismissal order aside. The court granted the motion and reinstated the case on January 4, 1995.

The parties settled the personal injury dispute on January 27, 1995. The settlement was made necessary because the respondent had named an improper party, the father of the other driver, rather than the driver, and had thereby allowed the statute of limitations to run on Franks's claim. The new lawyer also states that the respondent failed to answer his and Franks's reasonable requests for information.

The hearing board determined that the respondent's conduct violated R.P.C. 1.3 (neglect of a legal matter); and R.P.C. 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information). Respondent once again violated C.R.C.P. 241.6(7) by not responding to the request for investigation.

### E

The hearing board made the following additional findings:

1. The respondent is under supervised probation in Las Vegas, Nevada, where he is employed as a legal assistant. He is living with his children and their mother.

2. When he lived in Colorado Springs, the respondent was treated by Dr. Gary G. Forrest who indicated that to the best of his knowledge, as of June 13, 1995, the respondent remained totally abstinent from alcohol and drugs throughout the course of treatment.

3. The respondent was sincerely apologetic and remorseful with respect to his neglect of client matters.

4. The respondent closed his law practice in October 1994.

5. The respondent has not, however, disclosed his criminal record or his history of substance abuse to his present employer.

### II

■ The hearing panel approved the hearing board's recommendations that the respondent be suspended for three years and be required to comply with certain conditions prior to being reinstated. The assistant disciplinary counsel has not excepted to these recommendations.

Recommendations of the grievance committee as to the proper disciplinary sanction, however, are only advisory. *People v. Raubolt*, 831 P.2d 462, 464 (Colo.1992). Given the seriousness of the respondent's neglect, his abandonment of his clients, and given his apparent "complete indifference to, and disregard of" these disciplinary proceedings, *People v. Crimaldi*, 804 P.2d 863, 865 (Colo.1991), it is problematical whether a long period of suspension is sufficient.

*People v. Odom*, 914 P.2d 342, 344–45 (Colo. 1996); *accord People v. Madigan*, 914 P.2d 346, 348–49 (Colo.1996). The respondent's felony convictions by themselves warrant a significant period of suspension. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), provide that, in the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "a lawyer knowingly engages in criminal conduct that does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.12.

■ Moreover, the ABA *Standards* state that in the absence of mitigating factors, disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41. *See, e.g., People v. Jamrozek*, 914 P.2d 350, 354 (Colo.1996) (lawyer disbarred after collecting fees from a number of clients, then abandoning them, causing some clients considerable harm). The findings of the board support the proposition that the respondent abandoned his clients. On the other hand, suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

ABA *Standards* 4.42. *See, e.g., People v. Anderson*, 817 P.2d 1035 (Colo.1991) (attorney's misconduct in failing to respond to discovery requests, in leaving practice without properly withdrawing from cases or filing change of address, in failing to timely prepare a written judgment, and in failing to prevent dismissal of case for failure to prosecute, was mitigated by absence of significant history of discipline and warranted three-year suspension).

In mitigation, the hearing board found that the respondent has no prior disciplinary record, ABA *Standards* at 9.32(a); there is the presence of personal or emotional problems, *id.* at 9.32(c); interim rehabilitation; and the respondent has expressed remorse for his misconduct, *id.* at 9.32(*l* ). Aggravating factors include the respondent's dishonest and selfish motive, *id.* at 9.22(b); a pattern of misconduct, *id.* at 9.22(c); multiple offenses, *id.* at 9.22(d); and the respondent's substantial experience in the practice of law, *id.* at 9.22(i).

Respondent's criminal conduct in conjunction with the effective abandonment of his clients warrants careful consideration of the appropriate sanction. However, given the abbreviated record in these default proceedings, and the facts and circumstances of this particular case, we elect to follow the recommendations of the hearing panel and hearing board. *See Odom,* 914 P.2d at 345. Accordingly, we order that the respondent be suspended for three years, the maximum period permitted by our rules. Some members of the court, however, would have disbarred the respondent.

### III

It is hereby ordered that Timothy Paul McCaffrey be suspended from the practice of law for three years, effective immediately upon the issuance of this opinion. C.R.C.P. 241.21(a). It is further ordered that, as a condition of reinstatement, the respondent establish by clear and convincing evidence that he is mentally competent and able to engage in the practice of law. It is also ordered that, as a condition of reinstatement, the respondent prove that he has complied with all of the terms and conditions of his probation in the criminal cases. Finally, the respondent is ordered to pay the costs of these proceedings in the amount of $171.50 to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Denver, Colorado 80202, within thirty days after the announcement of this opinion. McCaffrey shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)-(d).