

the respondent pay the costs of this proceeding in the amount of $61.36 to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Denver, Colorado 80202, within thirty days after the announcement of this opinion.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Assistant Disciplinary Counsel, Denver, for Complainant.

Michael V. Makaroff, Denver, for Attorney–Respondent.

PER CURIAM.

In a stipulation, agreement, and conditional admission of misconduct, C.R.C.P. 241.18, the respondent in this lawyer discipline case has consented to disbarment. An inquiry panel of the supreme court grievance committee approved the conditional admission including the recommendation of disbarment. We accept the conditional admission and order that the respondent be disbarred.

**The PEOPLE of the State of Colorado, Complainant,**

v.

**David Allen MUNDIS, Attorney– Respondent.**

**No. 96SA431.**

Supreme Court of Colorado, En Banc.

Dec. 23, 1996.

I

The respondent was admitted to practice law in Colorado in 1993. He was immediately suspended from the practice of law on March 8, 1996, because of the allegations below. C.R.C.P. 241.8. The conditional admission provides as follows.

A

In August 1993, Kenneth Gallagher, a construction subcontractor, filed an action in small claims court against Tech Sites Corporation, alleging non-payment for work performed. Tech Sites filed a counterclaim and the case was transferred to county court in September 1993. Gallagher hired the respondent to represent him in December 1993. At that time, the respondent had been licensed to practice law for about two months. He entered his appearance in the case by filing an amended complaint.

The primary issues involved whether Gallagher performed the work in a good and

workmanlike manner and whether it was necessary for Tech Sites to carry Gallagher on its insurance policy because of Gallagher's failure to obtain coverage for himself. Trial was scheduled to begin May 18, 1994. This was the respondent's first trial.

The respondent did not conduct any interviews except for that of another subcontractor who worked on the same projects. The only witnesses called by the respondent were his client and the other subcontractor. After trial, the court entered judgment against Gallagher on the defendant's counterclaims in the amount of $4,848.24 for Gallagher's failure to complete two of the projects, and $1,818.16 for his failure to provide proof of insurance.

The respondent agreed to file a motion for new trial. He obtained a letter from a project superintendent on one of the projects stating that none of Gallagher's work was substandard and that all of the acoustical ceilings installed by Gallagher were used as installed. On June 2, 1994, the respondent submitted this letter as an exhibit in two separate motions for new trial. The motions attempted to introduce new evidence that had not been presented at trial. The respondent's client went to the court in September 1994 and learned for the first time that the motions had been denied and that his right to appeal had expired.

The respondent has admitted that the above conduct violated R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to that lawyer); R.P.C. 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); and R.P.C. 1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation).

### B

A woman retained the respondent in December 1994 to represent her regarding custody and visitation involving a child born from her relationship with the child's father. On December 16, 1994, the client's father wired $2,500 to the respondent's trust account as an advance fee against the respondent's fees of $125 per hour and costs. The respondent prepared some of the pleadings, but before they were filed, his client notified him that she and the child's father had resolved all of the issues themselves and she would not be needing the respondent's services any longer.

About February 22, 1995, the respondent sent a trust account check for $1,531.25 to the woman's father as a refund of the unused portion of the advance fee. On March 3, 1995, however, the respondent deposited $300 from his trust account into his operating account. These funds belonged to the woman's father and the respondent did not have the permission or authority to withdraw the funds.. As a result of the transfer, the respondent's refund check to the father was returned for insufficient funds. Following the father's request for investigation with the Office of Disciplinary Counsel, the respondent withdrew funds from his trust account and operating account and sent the father a cashier's check for $1,546.75. Because the respondent failed to segregate his personal funds from his clients' funds, and because he failed to maintain complete records of his clients' funds, he cannot identify the client funds he used to purchase the cashier's check.

The foregoing conduct violated R.P.C. 1.15(a) (a lawyer shall hold property of clients or third persons separate from the lawyer's own property); R.P.C. 1.15(b) (a lawyer shall promptly deliver to a client or third person any funds or other property that the client or third person is entitled to receive); R.P.C. 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation); as well as C.R.C.P. 241.6(3) (misconduct involving any act or omission violating the highest standards of honesty, justice or morality); and C.R.C.P. 241.6(4) (committing an act or omission constituting gross negligence).

### C

Between June 1994 and March 1995, the respondent engaged in six insufficient funds

transactions involving his lawyer's trust account. From February to November 1995, he committed twenty-five insufficient funds transactions with his operating account. Several of the checks remain outstanding. The respondent stipulated that he violated R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 8.4(h) (conduct adversely reflecting on the lawyer's fitness to practice law); C.R.C.P. 241.6(3) (violating the highest standards of honesty, justice or morality); and C.R.C.P. 241.6(4) (gross negligence).

### D

As indicated above, from November 1993 through August 1995, the respondent failed to segregate his personal funds from his clients' funds, and because he failed to maintain complete records of the funds in his trust account, he cannot identify the source of these funds or establish his entitlement to them.

On May 17 and June 14, 1994, the respondent deposited a total of $122,390.95 into his trust account on behalf of his client, Matt Iten. At the time of the deposit, the trust account had a balance of $2,244.25. The respondent claims that these funds belonged to him. By May 26, 1994, the respondent had spent the $2,244.25 and misappropriated an additional $5,678.74 from Iten's funds for personal, business and other client expenses, without Iten's permission or knowledge. By July 18, 1994, the respondent had misappropriated $12,356.28 of Iten's funds. From May 17 through August 18, 1994, the respondent disbursed $102,500 on Iten's behalf, leaving $19,000 due to the client. Between August 18 and September 14, 1994, there were insufficient funds in the trust account to pay the $19,000 due Iten. But on September 14 the respondent deposited $15,000 into the trust account on behalf of another client, Wilford Comer. On September 27, 1994, the respondent paid Iten $19,000; $6,354.18 of this belonged to Wilford Comer.

The respondent represented Wilford Comer in a variety of criminal and civil matters, including an estate proceeding involving Comer's deceased father. On September 1, 1994, the opposing lawyer in the estate proceeding sent a letter to the respondent enclosing a settlement agreement and the $15,000 check as Comer's share of the estate. The lawyer asked the respondent not to release the funds prior to the execution and return of the settlement documents. Nevertheless, the respondent used some of Comer's funds to pay Iten. Comer executed the settlement agreement on November 22, 1994, but the respondent did not forward Comer's money to him. As of February 1996, he still had not paid Comer his share of the estate proceeds. The probate matter was dismissed in February 1995, but the respondent did not notify Comer that the matter had been settled and closed.

In the meantime, Comer advised the respondent in December 1994 that he needed money and the respondent gave him a check for $1,000 as a so-called loan against Comer's settlement proceeds. Comer did not know that the respondent had already received the settlement funds. In January 1995, the respondent gave Comer an additional $4,000.

On May 5, 1995, the respondent withdrew $700 from the bank account of another client, Ronald Tillman, who had asked the respondent to send the money to Kings Memorial Park in Baltimore, Maryland. The money was to be used to purchase a gravestone for Tillman's recently deceased son. Tillman was seriously ill and was incarcerated in a drug and alcohol rehabilitation center. The respondent deposited the $700 into his operating account, and by the end of May he had used the $700 for his own personal expenses without Tillman's authorization or knowledge.

Tillman was contacted by a representative of Kings Memorial Park and was advised that no payment had been received from the respondent, although the respondent told Tillman that he had sent the payment. The assistant disciplinary counsel indicates that there is a record of an uncashed check dated September 8, 1995, from the respondent to

Kings Memorial in the amount of $600. The respondent believed that the $100 difference was his fee. In any event, between July and December 1995, Tillman made payments to Memorial Park for the gravestone, and as of February 1996, the respondent has not refunded any funds to Tillman.

In short, the respondent failed to segregate his own funds from client funds and knowingly misappropriated client funds belonging to Iten, Comer, and Tillman. He thereby violated R.P.C. 1.15(a) (failure to hold clients' property separate from the lawyer's own property); R.P.C. 1.15(b) (failure to promptly deliver to a client or third person any funds or other property that the client or third person is entitled to receive); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 8.4(h) (conduct adversely reflecting on the lawyer's fitness to practice law); C.R.C.P. 241.6(3) (violating the highest standards of honesty, justice or morality); and C.R.C.P. 241.6(4) (gross negligence).

### E

In connection with a trip to New York, the respondent purchased two airline tickets from Carlson Wagonlit Travel for $650 with an operating account check, which was subsequently returned for insufficient funds. Despite repeated requests, the respondent has never paid the travel agency. As the respondent has admitted, his conduct violated R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 8.4(h) (conduct adversely reflecting on the lawyer's fitness to practice law); and C.R.C.P. 241.6(3) (violating the highest standards of honesty, justice or morality).

### F

In January 1995, one of respondent's clients was charged with theft of property valued at less than $400. The respondent entered his appearance in the case on January 29, 1995, and the matter was set for disposition on April 24. Before that date,

however, the client fired the respondent. The respondent did not properly withdraw from the criminal case, did not appear at the disposition hearing or at his own contempt hearing, and was adjudged guilty of contempt of court. His conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 8.4(d) (conduct prejudicial to the administration of justice); R.P.C. 8.4(g) (conduct violating accepted standards of legal ethics); and R.P.C. 8.4(h) (conduct adversely reflecting on the lawyer's fitness to practice law).

### G

In December 1993, Roger Duncan hired the respondent to represent him regarding numerous violations of the Aurora Fire Code involving an apartment building Duncan owned. The respondent negotiated a disposition of the case in municipal court on January 3, 1994, whereby Duncan would receive a sixty-day suspended sentence, conditioned on Duncan paying a $2,500 fine and performing 100 hours of community service. By late January, Duncan was having second thoughts and the respondent agreed to appeal.

The respondent filed a notice of appeal on February 2, 1994 in the district court, but not in the municipal court. He also prepared a "summons" which he had issued by the municipal court, purporting to give notice to the City of Aurora that it was required to file a response to the appeal in twenty days. He did not file a designation of record with the municipal court, did not post an appeal bond, and did not make a timely deposit for the preparation of the record of the municipal court proceedings. The respondent believed that his actions automatically stayed his client's sentence, and Duncan thought that he did not have to pay his fine or do any community service pending resolution of the appeal. When Duncan did not appear at a scheduled hearing to review his compliance with the conditions of his sentence, the municipal court issued a bench warrant for his arrest on March 16, 1994.

The respondent filed a motion to vacate the warrant in April and a hearing was

scheduled for May 16, 1994. The respondent could not get in touch with his client, however, and because Duncan was not present at the hearing, the warrant for his arrest remains outstanding.

In the Duncan matter, the respondent failed to provide competent representation on the appeal by not following proper procedures to perfect the appeal, with the direct result that Duncan's appeal was dismissed. The respondent thereby violated R.P.C. 1.1 (failure to provide competent representation to a client). He also failed to adequately communicate with his client and did not respond to reasonable requests for information, contrary to R.P.C. 1.4(a).

## H

David M. Hefley consulted with the respondent in June 1994 about a possible malicious prosecution claim against the City of Aurora. They executed a written contingent fee agreement on November 1, 1994, and the respondent promised to file the required notice of claim pursuant to the Colorado Governmental Immunity Act. The respondent did not file the notice of claim and the 180-day time period expired after Hefley terminated the respondent in January 1995. The respondent nevertheless charged Hefley $75 to prepare the unfiled notice of claim. The respondent's neglect violated R.P.C. 1.3.

## I

On February 21, 1996, the respondent agreed to and signed a joint petition for his immediate suspension pursuant to C.R.C.P. 241.8. The respondent's immediate suspension was effective March 8, 1996. The respondent did not, however, notify his clients of the suspension, nor did he file the required affidavit with this court, contrary to C.R.C.P. 241.21(b)-(d).

Moreover, following his immediate suspension, the respondent defended a client on charges of first degree sexual assault and second degree burglary in the client's criminal trial, and sentencing.

He also appeared on behalf of another client during his suspension and signed interrogatory responses on her behalf. On May 1, 1996, the respondent filed a motion to withdraw, alleging, falsely, that he had been placed on disability inactive status.

In a third case, the respondent filed a motion to withdraw a defendant's plea in district court. The district judge states that the respondent held himself out as the defendant's lawyer during the proceedings through April 25, 1996. On this date, the judge confronted the respondent regarding his suspension from the practice of law.

Finally, the respondent appeared in a civil matter pending in Denver County Court in May 1996 while under the order of immediate suspension.

The respondent's conduct in these four matters violated R.P.C. 5.5(a) (practice law in a jurisdiction in violation of the regulations of the legal profession); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 8.4(d) (conduct prejudicial to the administration of justice); R.P.C. 8.4(h) (conduct adversely reflecting on the lawyer's fitness to practice law); as well as C.R.C.P. 241.21(b)-(d).

## II

The inquiry panel approved the conditional admission including the recommendation that the respondent be disbarred and that readmission be conditioned on certain conditions. The respondent's knowing misappropriation of client funds, standing alone, would warrant disbarment. *E.g., People v. Motsenbocker,* 926 P.2d 576, 577 (Colo.1996) (lawyer disbarred for knowingly misappropriating bar association funds); *see also* ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) 4.11 (in the absence of mitigating factors, "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."). In addition to the misappropriations, the respondent seriously neglected a number of

client matters and practiced law while under an order of suspension.

The assistant disciplinary counsel has stipulated that the following mitigating factors are present: the respondent has not been previously disciplined in his three years as a lawyer, *id.* at 9.32(a); the respondent was experiencing personal or emotional problems, *id.* at 9.32(c); and he was inexperienced in the practice of law, *id.* at 9.32(f).

The parties agree that disbarment is appropriate despite the above factors in mitigation, and we do too. *See Motsenbocker,* 926 P.2d at 577 (disbarment necessary despite absence of prior discipline, presence of personal or emotional problems, and inexperience in practice of law). Accordingly, we accept the conditional admission and the inquiry panel's recommendation.

### III

It is hereby ordered that David Allen Mundis be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is further ordered that prior to readmission, the respondent will be required to demonstrate that there are no medical or psychological bases that impair his ability to fulfill his responsibilities as a lawyer. The respondent will also be required to demonstrate prior to readmission that he has made restitution to: (1) Carlson Wagonlit Travel in the amount of $650 plus statutory interest from March 14, 1995; (2) Ronald Tillman in the amount of $700 plus statutory interest from May 5, 1995; and (3) Wilford Comer in the amount of $9,500 plus statutory interest from September 14, 1994. It is further ordered that the respondent pay the costs of this proceeding in the amount of $1,353.69 within ninety days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Denver, Colorado 80202.