**The PEOPLE of the State of Colorado, Complainant,**

v.

**Michael Clark MANNIX, Attorney–Respondent.**

**No. 96SA474.**

Supreme Court of Colorado,
En Banc.

April 14, 1997.

Linda Donnelly, Disciplinary Counsel, and James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Michael Clark Mannix, Boulder, Pro Se.

PER CURIAM.

In this lawyer discipline case, a hearing panel of the Supreme Court Grievance Committee approved the findings and the recommendation of a hearing board that the respondent be disbarred. We accept the panel's recommendation.

### I.

The respondent was admitted to practice law in this state in 1986. On November 14, 1996, the respondent was transferred to disability inactive status. This case involves three consolidated complaints against the respondent. In Nos. GC 96B20 and GC 96B–42 the factual allegations of the complaints were established pursuant to the board's orders of default following the respondent's failure to answer the complaints. C.R.C.P. 241.13(b); *People v. McCaffrey*, 925 P.2d 269, 270 (Colo.1996). The complaint in No. 95B–89 was dismissed on the assistant disciplinary counsel's motion because the witness was unavailable to testify. The respondent appeared at the hearing. Based on the respondent's defaults and the evidence presented, the hearing board made the following findings by clear and convincing evidence.

### II.   No. GC 96B–20
#### A.

On March 15, 1995, Harry and Maurene Clark hired the respondent to represent them in their efforts to have their son's death certificate amended so that it would not indicate that he had committed suicide. The respondent expressed his confidence that he could help them, and they paid him a $400 advance fee at that time. The respondent

then proceeded to ignore his clients' telephone calls and letters. On September 6, 1995, the Clarks wrote to the respondent and fired him. They also asked him to return all of the documents and photographs that they had given him. The respondent has not done so, nor has he ever provided the Clarks with an accounting, refunded their $400 advance fee or communicated with them in any way.

The hearing board determined that the respondent violated R.P.C. 1.3 (neglecting a legal matter entrusted to the lawyer); R.P.C. 1.4(a) (failing to keep a client reasonably informed about the status of a matter); R.P.C. 1.15(b) (failing to return client funds and to render an appropriate accounting to the client upon request); R.P.C. 1.16(d) (failing to take reasonable steps to protect a client's interests upon termination of representation, such as refunding any unearned advance payment of fees); and R.P.C. 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). Because he did not respond to the request for investigation or otherwise cooperate with the investigation in the Clark matter, the respondent also violated R.P.C. 8.1(b) (failing to respond to a lawful demand from a disciplinary authority); and C.R.C.P. 241.6(7) (failing to respond to a request by the grievance committee without good cause shown, or obstruction of the committee or any part thereof in the performance of its duties).

### B.

In April 1992, the Boulder police investigated Eric Rosidivito in connection with his role in an alleged extortion scheme. Rosidivito left the country in April 1992 for about a year. In April or early May of 1992, Rosidivito's lawyer gave the respondent $10,000 in cash as an advance fee to represent Rosidivito. According to Rosidivito, he never intended for the respondent to represent him on criminal charges if they were filed, but rather to perform an investigation in the case. The respondent did some minor amount of work on the case prior to the filing of formal charges.

When Rosidivito returned in April 1993, he asked the respondent to return his money. The respondent conceded that Rosidivito was entitled to a refund of a substantial portion of the $10,000. Rosidivito asked the respondent for a full accounting. The respondent has never refunded any money to Rosidivito or provided an accounting of what happened to the money.

The hearing board concluded that the respondent's conduct, which occurred both before and after the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 1–102(A)(4) and R.P.C. 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); DR 2–106(A) (entering into an agreement for, charging, or collecting a clearly excessive fee); DR 9–102(A) (failing to deposit client funds in one or more identifiable interest-bearing depository accounts); DR 9–102(B)(3) (failing to maintain complete records of client property in the possession of the lawyer and to render appropriate accounts to the client regarding the property); R.P.C. 1.15(a) (commingling client and personal funds); R.P.C. 1.15(b) (failing to promptly refund unearned client funds); and R.P.C. 1.16(d) (failing to take reasonable steps to protect a client's interests upon termination of employment, including refunding any unearned client funds). The respondent failed to cooperate in the investigation of this matter also, thereby violating R.P.C. 8.1(b) and C.R.C.P. 241.6(7).

### III. No. GC 96B–42
### A.

██ The respondent represented a criminal defendant in a case pending in Boulder County District Court which was set for hearing on October 17, 1995. The respondent's client appeared for the hearing, but the respondent did not, and it had to be rescheduled.

In a second matter before the same district judge, the respondent failed to appear at a hearing on January 18, 1996. The respondent's client advised the court that he had not heard from the respondent for several weeks. The district judge appointed new counsel for the defendant.

The respondent violated R.P.C. 1.3 (neglect), R.P.C. 8.4(d) (engaging in conduct

prejudicial to the administration of justice), and R.P.C. 8.4(h) (engaging in conduct that adversely reflects on fitness to practice).

### B.

■ The respondent was administratively suspended from the practice of law for failure to pay his 1994 registration fee. The respondent was advised that he was suspended by certified mail on May 24, 1995. Nevertheless, he continued to practice law and he did not comply with the notification requirements of C.R.C.P. 241.21(b)–(d).

His conduct violated R.P.C. 5.5(a) (practicing law in violation of the regulations of the legal profession), and R.P.C. 8.4(d) (engaging in conduct prejudicial to the administration of justice). Moreover, because he failed to respond to the request for investigation filed with respect to the last two matters, he violated C.R.C.P. 241.6(7).

### C.

On September 1 1994, Berkley Holston hired the respondent to represent her on driving under the influence charges. She paid him $750 to represent her at the Department of Motor Vehicles hearing concerning the revocation of her driver's license in connection with the criminal charges. It was determined at the hearing that Holston had refused to submit to a blood test after her arrest and her license was revoked.

Holston paid the respondent an additional $500 on January 10, 1995 to appeal the revocation to the district court. Holston received a bill from the transcribing service for the transcript of the hearing and the respondent told her that he would pay for the transcript and then bill her. The respondent never ordered the transcript although he represented to his client that he had. Holston also learned in May 1995 for the first time that her appeal had been dismissed a month earlier. She fired the respondent and hired another lawyer. She had to spend about $4,800 in additional attorney fees to get the order dismissing her appeal reversed. The record had to be reconstructed because the tape of the hearing was destroyed due to the respondent's not paying for the transcript when he promised.

■ The respondent's conduct violated R.P.C. 1.3 (neglecting a legal matter); R.P.C. 1.4(a) (failing to keep a client reasonably informed about the status of a matter); R.P.C. 1.15(b) (failing to return client funds and to render appropriate accounting to client upon request); R.P.C. 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and R.P.C. 8.4(d) (engaging in conduct prejudicial to the administration of justice). In a motion to set aside the dismissal of Holston's appeal that the respondent filed before he was discharged, he falsely stated that the failure to pay for the transcript was essentially his client's fault, thereby violating R.P.C. 3.3(a)(1) (making a false statement of material fact to a tribunal). He failed to respond to the request for investigation in this matter, contrary to C.R.C.P. 241.6(7).

### D.

■ Finally, the respondent was appointed to represent Douglas Oates in a criminal case pending in Boulder County District Court. Oates was charged with unlawful use of a controlled substance, and with escape. Oates pleaded guilty to both offenses on June 29, 1994, and was sentenced to thirty months in the department of corrections. At the sentencing hearing, Oates reminded the respondent that he was entitled to credit for his presentence confinement time. The respondent assured Oates that he would make sure Oates received the credit. The respondent did nothing of the kind, and did not respond to any of his client's attempts to contact him. He thereby violated R.P.C. 1.3 (neglecting a legal matter), and R.P.C. 1.4(a) (failing to keep a client reasonably informed about the status of a matter); as well as C.R.C.P. 241.6(7), again.

### IV.

The hearing panel approved the board's recommendation that the respondent be disbarred and be required to satisfy certain conditions prior to any application for readmission. Neither the respondent nor the

complainant excepted to the recommendations.

 The hearing board found that the respondent knowingly converted the funds given to him on behalf of Rosidivito. In addition, although he may have done some work in the Clark matter, he never communicated with his clients and he did not account for what he did with their money. The respondent's knowing misappropriation of client funds, by itself, warrants disbarment. *See, e.g., People v. Mundis,* 929 P.2d 1327, 1332 (Colo.1996) (lawyer disbarred for knowingly misappropriating client funds, seriously neglecting a number of client matters and practicing law while under an order of suspension); *see also* ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) 4.11 (in the absence of mitigating factors, "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."). As the lawyer in *Mundis,* the respondent also seriously neglected multiple client matters and practiced law while under an order of suspension. *See Mundis,* 929 P.2d at 1328, 1330, 1331.

Moreover, the respondent has a history of discipline consisting of two letters of admonition in 1994, which is an aggravating factor. *See* ABA *Standards* 9.22(a). The only mitigating factor that the board found was that the respondent appeared to have genuine remorse for his misconduct. *See id.* at 9.32(*l* ).

 Given the gravity of the respondent's ethical violations, we agree with the hearing panel and hearing board that disbarment, with certain conditions for readmission, is appropriate.

## V.

It is hereby ordered that Michael Clark Mannix be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after the issuance of this opinion. It is further ordered that prior to any application for readmission, and as a condition of readmission, the respondent must demonstrate:

(1) that he has paid Eric Rosidivito $9,000 plus statutory interest from May 1, 1993, until paid;

(2) that he has paid any additional attorney fees expended by Berkley Holston as a result of his misconduct in the appeal of the revocation of her driver's license; and

(3) that he has accounted to Harry and Maurene Clark for the work he did on their behalf.

It is further ordered that the respondent pay the costs of this proceeding in the amount of $126.17 within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.