**In the Matter of Kevin L. SCIONTI.**

**No. 49S00–9206–DI–444.**

Supreme Court of Indiana.

March 23, 1994.

Lorine Brown Regulus, Indianapolis, for respondent.

Charles M. Kidd, Staff Atty., Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

DISCIPLINARY ACTION

PER CURIAM.

Kevin L. Scionti, the Respondent here, was charged by disciplinary complaint with violating Rule 1.2(d) of the Rules of Professional Conduct for Attorneys at Law, pursuant to which an attorney shall not counsel a client to engage in conduct that the lawyer knows is criminal. Additionally, the complaint charges Respondent with violating Prof. Cond.R. 8.4(d) by engaging in conduct prejudicial to the administration of justice.

This Court appointed a Hearing Officer pursuant to Ind.Admission and Discipline Rule 23, Section 11(e), who, following hearing, tendered his findings of fact and conclusions of law.[1]

Respondent timely petitioned this Court for review, and therein challenged the Hearing Officer's conclusions of law. Our review in disciplinary cases is *de novo,* and we examine all matters presented. *In re Young* (1989), Ind., 546 N.E.2d 819. In this regard, this Court notes that, by agreement of the parties, the record was reopened for the submission of the trial court transcript which gave rise to this disciplinary action. Facts taken from the transcript are included in our factual findings. Since the Respondent does not challenge the Hearing Officer's findings of fact, this Court accepts and adopts them. However, we remain the final arbiter of misconduct and sanction. *In re Levinson* (1992), Ind., 604 N.E.2d 599.

Accordingly, we now find that Respondent was admitted to the Bar of this state on October 15, 1982, and is therefore subject to the disciplinary jurisdiction of this Court. Gary and Annette Smoot's marriage was dissolved by court order on April 25, 1990. The court granted Annette custody of the Smoot's minor son pursuant to a July 25, 1990 court order. Gary was granted visitation rights for every other weekend, commencing at 5:00 p.m. and ending 6:00 p.m. Sunday. On December 5, 1990, the Delaware County Prosecutor charged Annette with child molesting, a Class B felony. The

1. The evidence submitted at hearing consisted solely of the parties' stipulations of fact and the Respondent's affidavit.

purported victim was the Smoot's minor son. He remained in the custody of Annette during this time.

On September 20, 1991, Respondent entered his appearance on behalf of Gary in a post-dissolution proceeding challenging the terms and conditions of the July, 1990 custody order. Gary had previously retained attorney Donald Dunnuck to represent him, and Mr. Dunnuck's appearance continued.

On November 8, 1991, Gary picked up his minor son for visitation. He failed to return his son on November 10, 1991, on the advice of Respondent, thus violating the July, 1990 court order setting the terms and condition of visitation. Judge Thomas Newman of the Henry Superior Court signed an *ex parte* order on November 11, 1991, directing Gary to immediately return his son to his mother's custody. Respondent's request that the order be removed and his subsequent application for emergency custody were both denied by Judge Newman. On November 12, 1991, Annette was charged by information with intimidation and obstruction of justice, both Class D felonies, by the Delaware County Prosecutor. The charges alleged that Annette struck her minor son and coached him not to testify against her. During the period of time Gary unlawfully retained custody of his son, he maintained regular telephone conversations with Respondent and Mr. Dunnuck.

A contempt violation hearing regarding Gary's failure to return his son was held on November 22, 1991. At that time, Gary had not yet returned his son to Annette's custody. During hearing, the court heard the following testimony of Respondent:

Q: Mr. Scionti, there's been some testimony that you knowingly gave advice to Mr. Smoot to violate a Court Order. Is that correct?

A: Uh, that is correct.

Q: Could you explain to the Court the circumstances surrounding that advice, please?

. . . . .

A: That after consultation with the Delaware Prosecutor's Office, we were aware that a new information would be filed the 12th.... Uh, that we were aware that new charges would be filed the 12th, uh, and that we felt the presiding Judge of this Court or the criminal Court needed to be advised of that matter uh, before Gary returned the child to Annette, should that be what the Court decided to do.

. . . . .

Q: So you advised Mr. Smoot to [not return his son] despite the fact that there was a custody Order existing in this cause at that time. Yes or no?

A: Yes.

Q: And so on that basis, you advised Mr. Smoot to do that? Despite the Court Order. Yes?

A: Yes.

Q: And you knew that there was an Ex Parte Order that was signed by the Judge on the 12th. Yes?

A: I learned on the 12th that it had been signed on the 11th.

Q: And you still advised Mr. Smoot to stay in hiding with the child?

A: Until such time as this Court could hold a hearing or the criminal Court could hold a hearing. Yes.

Q: And you knew that there was an entry at some point made by this Court denying your Petition for an Ex Parte Petition for Emergency Custody. Yes?

A: Yes.

Q: And you still did not advise Mr. Smoot to return the child?

A: If I recall, on that date, the Judge had set this matter today, for hearing today and we advised Mr. Smoot that he would have to bring the child to Court today. I advised him to keep him until today. Yes.

Transcript of hearing on contempt citation, November 22, 1991, at 68, 69, 75, 76–77.

Gary testified at the hearing that Respondent and Mr. Dunnuck advised him, during a telephone conversation on November 8, 1991, to take his son and not return him.

At the conclusion of the hearing, the court found no justification for the violation of the orders, and thus found Gary to be in contempt. He was incarcerated in the Henry County Jail for ninety days. All pending criminal charges against Annette were dismissed on November 26, 1991.

We find that the evidence clearly and convincingly establishes that Respondent counseled his client to engage in conduct that Respondent knew was criminal, thereby violating Prof.Cond.R. 1.2(d). Respondent further violated Prof.Cond.R. 8.4(d) by engaging in conduct that is prejudicial to the administration of justice.

Respondent contends that a finding of violation of Prof.Cond.R. 1.2(d) is unwarranted because the offense Respondent's client committed derived from a civil action, and therefore a criminal violation was unforeseeable by Respondent. We find this argument unpersuasive. Respondent is a licensed attorney with several years of experience in private practice. It is thus not unreasonable to expect Respondent to be aware of Indiana law making interference with custody a criminal violation.[2]

Respondent further relies on the comments to Prof.Cond.R. 8.4(d) and 1.2(d) as supportive of his assertion that he genuinely believed that the advice he provided to his client was justified by the circumstances as he knew them. The comment to Prof. Cond.R. 1.2(d) provides:

A lawyer may counsel a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.

The comment following Prof.Cond.R. 8.4(d) provides:

A lawyer may refuse to comply with an obligation imposed by law on a good faith belief that no valid obligation exists.

Respondent, however, admits only that he believed his advice to his client was justified by the situation. Respondent does not claim that the legal obligations imposed by court order were invalid. Any doubts as to the validity of the original visitation order should have been dispelled in Respondent's mind after the trial court judge signed the *ex parte* order on November 12, 1991, reaffirming the substance of the original order, and after Respondent's request for withdrawal of that order and application for emergency custody were denied. Respondent's client was clearly legally obligated to return custody of his child to his ex-wife. That obligation was three times reaffirmed by the court through its November 11 order, its denial of Respondent's request to withdraw that order, and its denial of Respondent's application for emergency custody. Respondent's argument that his perceived invalidity of the order excused his client's noncompliance is therefore without merit.

■ Now that we have found misconduct, it is the duty of this Court to assess an appropriate sanction. In doing so, we examine several factors, including the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct, and factors in aggravation and mitigation. *In re Clanin* (1993), Ind., 619 N.E.2d 269. In the absence of mitigating factors, Respon-

---

**2.** Indiana Code Section 35–42–3–4 provides, in relevant part:

(a) A person who knowingly or intentionally:
  (1) Removes another person who is less then eighteen (18) years of age to a place outside Indiana when the removal violates a child custody order of court; or
  (2) Removes another person who is less than eighteen (18) years of age to a place outside Indiana and violates a child custody order of a court by failing to return the other person to Indiana;
commits interference with custody, a Class D felony.

(b) A person who with the intent to deprive another person of custody or visitation rights:
  (1) Knowingly or intentionally takes or conceals; or
  (2) Knowingly or intentionally detains or conceals;
a person who is less than eighteen (18) years of age commits interference with custody, a Class C misdemeanor. However, the offense is a Class B misdemeanor if the taking and concealment, or the detention and concealment, is in violation of a court order.

dent's actions would reflect a complete disregard for the sanctity of the judicial process and thus would merit correspondingly significant sanction. However, we are cognizant of the fact that Respondent's misconduct was not motivated by personal gain and was directly attributable to his concern for the welfare of his client's minor son. Although his method of handling the situation is unacceptable and warrants our censure, Respondent's lack of sinister motives persuades us that he is not currently unfit to practice law. For these reasons, we conclude that a public reprimand is an appropriate sanction.

It is, therefore, ordered that the Respondent, Kevin L. Scionti, is hereby reprimanded and admonished for his misconduct set out above.

Costs of this proceeding are assessed against the Respondent.

SHEPARD, C.J., dissents, with SULLIVAN, J., concurring.

SHEPARD, Chief Justice, dissenting.

As a client, Gary Smoot might not have fully appreciated his legal duty to comply with the orders of courts. He likely relied on his lawyers, Donald Dunnuck and Kevin Scionti, whom we expect to know better. As a result of relying on his lawyers, Mr. Smoot spent 90 days in jail for his comtempt. Today, Mr. Smoot's lawyer gets a better deal— a simple reprimand. This differential in treatment is not justified by mitigating circumstances or by any expression of regret by respondent Scionti. Indeed, as he stood before Judge Newman explaining his advice to his client, Scionti did not express any apology. As he stands before us charged by the Disciplinary Commission and found by the hearing officer to have committed misconduct, Scionti continues to argue that he did not violate Rule 1.2 and that the Commission has not proven he did anything prejudicial to the administration of justice (a violation of Rule 8.2). I think it was prejudicial. The authority of our courts depends on lawyers and their clients obeying court orders. Mr. Scionti's conduct undermines that authority

and for that reason he should be subject to more severe sanction.

SULLIVAN, J., concurs.