**The PEOPLE of the State of Colorado, Complainant,**

v.

**Craig William MERCER, Respondent.**

**No. 00PDJ009.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

May 25, 2001.

Opinion issued by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members, FREDERICK Y. YU and MADELINE A. COLLISON, both members of the bar.

## OPINION AND ORDER DISMISSING CLAIMS

### *CLAIMS AND CHARGES DISMISSED*

This matter was heard on December 5, 6, and 7, 2000, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Frederick Y. Yu and Madeline A. Collison, both members of the Bar. Charles E. Mortimer, Jr., Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Alexander Rothrock represented the respondent, Craig William Mercer ("Mercer") who was also present. The People's exhibits 1 through 14 were admitted into evidence. Respondent's exhibits A through J, L through O, Q through U and W through Y were also admitted into evidence. The PDJ and Hearing Board heard testimony from the People's witnesses Larry Tolley, Craig Mercer, Jack Strimbu, Laurence Canaday, Felicia Waddell and Luain T. Hensel. Mercer introduced testimony from Steve Bulmer, Jacqueline Tollerud, and character witnesses Robert B. Yegge, Michael

Makaroff and James C. Coyle. Mercer also testified on his own behalf.

The evidence presented to the PDJ and Hearing Board in this disciplinary case presented two dramatically different versions of the same events. The outcome of this proceeding is dependent almost entirely upon the assessment of credibility of the witnesses who testified.

The PDJ and Hearing Board considered argument of counsel, the exhibits admitted, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence.

### I. FINDINGS OF FACT

#### Case No. 00PDJ009

On July 4, 1997, Coleman Moore was involved in an automobile collision. Larry Tolley, a passenger in the Moore car, suffered a closed head injury and was otherwise seriously injured. Moore had no insurance at the time of the collision. Moore was criminally charged as a result of the incident. Moore retained Mercer to represent him on the charges.

As a result of his injuries, Tolley was placed in a medically-induced coma. He remained hospitalized throughout the remainder of July and thereafter underwent a month of in-patient rehabilitation. Tolley suffered memory loss and other cognitive dysfunction. Throughout the initial two-month period of his convalescence, Tolley was heavily medicated, occasionally exhibited bizarre and extreme behavior and, by his own admission, was in a "haze." Tolley's recall of events which transpired during that period of time is, at best, spotty.

In either late July or early August, Tolley became aware that Mercer was representing Moore on the criminal charges. Tolley called Mercer on at least one and possibly several occasions during that period of time to defend his friend, Moore, and provide information to Mercer which Tolley wanted to convey. Tolley also complained to Mercer about his medical treatment and his inability to obtain payment of his medical care by his insurance company.

Tolley was subpoenaed as a witness for the prosecution at Moore's preliminary hearing. On September 30, 1997, Tolley responded to the subpoena and appeared in court. Mercer and Moore were also present. Although the evidence is clear that Mercer and Tolley had a discussion outside of the courtroom that day in which they discussed the status of Tolley's efforts to recover from his insurance company, it cannot be determined by clear and convincing evidence whether Tolley or Mercer initiated that portion of the conversation relating to Tolley's insurance. At some point in the conversation, however, Mercer told Tolley that if he wanted Mercer's assistance, Tolley could call him at the office, make an appointment and they would discuss the matter. Mercer gave Tolley his business card.

Shortly thereafter, Tolley did make an appointment to see Mercer. They met in Mercer's office on October 3, 1997. After interviewing Tolley, Mercer presented him with a contingent fee agreement and Tolley signed the agreement and left the office. Within two hours, Mercer realized that his representation of Moore on the criminal charges and Tolley in connection with the injuries he suffered in the incident posed a conflict of interest which he had not discussed with Tolley. Mercer prepared a letter to Tolley in which he rescinded the contingent fee agreement, explained to Tolley that there was a conflict of interest in the two representations and advised Tolley that Mercer had referred the case to another lawyer, Laurence Canaday. The letter stated that Canaday would be contacting Tolley regarding the representation. Mercer gave the letter to his secretary, Jacqueline Tollerud, to place in the mail to Tolley. Tollerud either mailed or hand-delivered the letter to both Tolley and Canaday. Tolley denied he received the letter rescinding the contingent fee agreement. Canaday also denied receiving the rescission letter.

Canaday and Mercer were law school classmates. Canaday had experienced some difficulty successfully completing the Colorado bar examination. Mercer came to Canaday's aid and assisted him in preparing for the re-examination. Thereafter, Mercer referred some cases to Canaday, co-counseled with Canaday on three cases, allowed Canaday to meet with clients at his office, provided him with legal forms, loaned him legal research resources, discussed cases with him and provided some measure of secretarial support, through Ms. Tollerud, for Canaday's representation of clients. On at least one occasion prior to the Tolley matter, Mercer had referred a personal injury client to Canaday, assisted Canaday in the preparation of the case, referred Canaday to Jack Strimbu, an independent insurance claims consultant, provided office support and research resources and allowed Canaday to utilize Ms. Tollerud's secretarial skills in the prosecution of that case.

Jack Strimbu had a lengthy background working with insurance companies adjusting claims. Strimbu had been previously employed by at least two national insurance companies for many years, had worked as a legal assistant for four years in a law firm assisting the resolution of insurance related claims and for some time had offered his services as a consultant to attorneys in resolving insurance related cases. Strimbu had worked on over fifty cases with Mercer prior to the Tolley case. Strimbu's normal practice when engaged to assist an attorney was to evaluate coverage, prepare correspondence on the lawyer's letterhead to the insurance company for the lawyer's review and signature, consult with the lawyer concerning insurance-related issues, recommend courses of action regarding insurance, suggest settlement value and, in general, provide the lawyer with his experience and expertise in obtaining as favorable settlement under insurance coverage as possible for the lawyer's client. Strimbu testified that all of his work was supervised by the lawyer for whom he provided his services.

Strimbu normally billed the attorneys he consulted with on an hourly basis, but deferred payment of his bill until the insurance proceeds were received. It was his practice that if no insurance proceeds were received, he would not require payment of his bill for services. In effect, payment for his services was contingent upon the outcome of the case upon which he was working.

In the earlier case in which Strimbu had consulted with Canaday, Canaday had provided Strimbu with a supply of his letterhead upon which Strimbu was to prepare correspondence for Canaday's review and signature. Although both Canaday and Tolley testified that they never spoke to one another concerning Canaday's representation of Tolley, on October 7, 1997, Strimbu prepared a letter on Canaday's letterhead to an insurance claim service in connection with Tolley's claim for Personal Injury Protection ("PIP") benefits. The letter identified Canaday as Tolley's attorney, requested documentation regarding Tolley's medical treatment and had attached a release signed by Tolley which Mercer had obtained in his initial interview with Tolley prior to rescission of the contingent fee agreement. As in Strimbu's earlier work with Canaday, Strimbu delivered the letter to Mercer's office for review by Canaday. At that time, Canaday was working out of Mercer's office and materials delivered to the office would be available to Canaday. When the letter was delivered, Mercer reviewed the letter and signed Canaday's name on the signature line with a notation that it had been signed by Mercer.

Thereafter, Strimbu prepared numerous letters on Canaday's letterhead, most of which were signed by Canaday and forwarded to the intended recipient in connection with either Tolley's PIP claims or uninsured motorist insurance coverage. Responses to these letters were mailed to Canaday at an address other than Mercer's office address. One of the letters prepared by Strimbu on Canaday's letterhead, dated October 20, 1997, was a demand for settlement at policy limits of $25,000, and had a signature block for Canaday, but was not signed. Strimbu testified he discussed the demand with Canaday before the letter was forwarded. Canaday does not recall that discussion. By early November 1997, the insurance company had agreed to pay policy limits of $25,000, under its uninsured motorist coverage to Tolley for his injuries.

An insurance check in the amount of $25,000 for Tolley's settlement of the Uninsured Motorist coverage was endorsed and deposited into Canaday's trust account by Canaday on November 6, 1997. Tolley signed a release in favor of the insurance company which was notarized by Tollerud and received 65% of the $25,000 less expenses of $160.18, most of which had been incurred by Strimbu. Strimbu received $4,084.15 which covered his time, expenses and an estimate of future expenses for his continuing work on Tolley's PIP claim. Mercer received $4,026.03, which he claimed was the payment for services he had provided to Canaday in connection with his efforts to help Canaday begin a law practice, and Canaday received $800. The settlement statement signed by Tolley at the time of disbursement is on Canaday's letterhead. The original release was returned to the insurance company with a cover letter on Canaday's letterhead prepared by Strimbu and signed by Canaday.

Thereafter, at least two letters on Canaday's letterhead, one signed by Canaday and one unsigned, were sent to the insurance representatives in connection with efforts to resolve the PIP payment issues. Moreover, at least two additional letters, the latest of which is dated May 21, 1998, were sent from the insurance representatives to Canaday at his home address regarding the Tolley matter. In the interim, Tolley had become disenchanted by the amount of money he received in the settlement, didn't understand why 35% of the settlement had been deducted from the settlement check when no trial had taken place and, on July 27, 1998, filed a Request for Investigation ("RFI") with the then Office of Disciplinary Counsel. Mercer was informed of the RFI by letter dated September 16, 1998. Mercer contacted Canaday and discussed Tolley's allegations with him. Immediately thereafter, on September 24, 1998, Canaday sent a letter to Mercer regarding the Tolley case and one other case in which he stated "please let me know how you wish to notify Mr. Tolley and (second individual) of my withdrawal from their cases as their attorney as soon as possible."

Although the facts set forth above are substantially undisputed, the remainder of the facts are not. It was the People's theory and Canaday's testimony that Mercer asked Canaday to merely open a trust account for

the deposit and disbursement of the Tolley settlement proceeds, and to provide letterhead for use with the insurance company. The theory contends that Canaday was simply used as a straw man to allow Mercer to avoid detection on the conflict of interest problem arising from his representation of both Moore and Tolley. Canaday testified that he was paid $800 out of the settlement proceeds for the use of his letterhead and trust account and that he had no other involvement in the Tolley case other than attending the closing and signing some letters. Canaday, although admitting that Mercer had provided office and staff support, forms, consultation and other assistance to him, denied there was any agreement to pay for such assistance and denied that he was indebted to Mercer prior to the Tolley settlement.

Mercer, on the other hand, testified that after he prepared the letter rescinding his contingent fee agreement, he had no further involvement in the Tolley case apart from signing Canaday's name to the initial request letter to the insurance company and attending the settlement closing in which he received a portion of the disbursement. Mercer did acknowledge that as Moore's attorney, on October 18, 1997, he obtained an affidavit from Moore stating that Moore had no insurance at the time of the accident and that the affidavit was provided to Strimbu. Mercer claims that the $4,084.15 he received from the Tolley settlement proceeds were in payment of services he provided to Canaday in connection with a computer billing program, use of his office, staff and research resources and other aid he provided to Canaday in his efforts to assist Canaday getting started in the practice of law. Mercer acknowledged that there was no formal agreement between himself and Canaday to pay for those services but felt that the amount he received was less than the fair value of the services he had provided. Mercer could not provide documentation or a detailed breakdown of how the $4,084.15 was calculated.

Strimbu's testimony was consistent with Mercer's. Strimbu always understood Canaday to be the responsible attorney on the Tolley case, looked to Canaday for payment for his services and prepared all of the Tolley correspondence for Canaday's review and signature. Strimbu testified that he spoke with Canaday about the Tolley case on several occasions and took direction from him. Strimbu acknowledged that he held Mercer in high regard, considered him a major client and still consults on cases with him.

Jacqueline Tollerud, Mercer's legal secretary at the time who had thirty-six years' experience, testified that she recalled Mercer dictating the Tolley letter rescinding the contingent fee agreement and her preparation of the document. She recalls providing a copy to Tolley, and testified that she did no work on the Tolley case for Mercer after October 3, 1997, the date the letter was prepared. Ms. Tollerud recalled Canaday spent substantial amounts of time in Mercer's office in 1997, obtaining legal forms from her, asked her to prepare pleadings in his cases, made phone calls from Mercer's office in his absence and talked with Mercer about cases. Ms. Tollerud also testified that after Tolley received his settlement funds, he continued to call for Mercer in order to complain about the delay in obtaining PIP payments on his medical bills and that she, at Mercer's direction, always referred Tolley to Strimbu and Canaday. Ms. Tollerud also testified that she did not prepare the settlement disbursement sheet or the settlement disbursement checks in the Tolley case contrary to her normal practice on Mercer's cases.

### Case No. 00PDJ037

Mercer represented Felicia Waddell in connection with a child visitation matter in June 1998. Waddell had been divorced from Bradley Waddell in the state of Georgia in 1991. There were two minor children of the marriage at the time of the divorce. Subsequently, Waddell and the children moved to Colorado. Pursuant to an order issued in the Georgia divorce proceedings, Bradley Waddell was to have specific parenting time in the state of Georgia each year, including each summer. In June 1998, Bradley Waddell sent plane tickets to Waddell for the children to travel to Georgia for the court-ordered parenting time. The children did

not want to travel to Georgia for the 1998 summer visitation.

Waddell met with Mercer on June 26, 1998. By that time she was already in violation of the Georgia visitation order. At that meeting she advised respondent of the terms of the Georgia visitation order. Waddell was upset and predisposed to withhold the children's court-ordered visitation to Georgia. Mercer did not advise Waddell to violate the Georgia order; rather, he advised her that she had the "option" of disobeying the court order and explained the consequences which might flow from such conduct.

On June 26, 1998, Mercer sent a letter to Mr. Waddell returning the plane tickets, advising Mr. Waddell that the children were not coming and suggesting that a dialogue be undertaken to resolve the visitation dispute. The children did not travel to Georgia for the court-ordered visitation and Waddell was eventually held in contempt of the visitation order.

## II. CONCLUSIONS OF LAW

### Case No. 99PDJ009

The conclusions of law derived from the findings of fact in this case are almost totally dependent upon the perceived credibility of the witnesses.

Count one of the Complaint charges that Mercer solicited Tolley as a client at the scheduled preliminary hearing in the Moore case in violation Colo. RPC 7.3(a). Colo. RPC 7.3(a) provides:

> A lawyer shall not either in person or by live telephone contact, solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship where a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.

■ Mercer and Tolley gave substantially different versions of the manner in which discussion of Tolley's legal problems arose. Tolley, however, admitted that he was in a "haze" during that period of time, had no recollection of various other events which occurred at or about the same time, and initially denied having any conversations with Mercer prior to Moore's preliminary hearing. Mercer, however, recalled several phone calls from Tolley before the hearing, and recalled earlier discussions regarding Tolley's difficulties in getting health care bills paid and support for Moore's predicament. Ultimately, Tolley admitted in his testimony that there may have been prior phone calls and that the decision for Mercer to meet with him was "mutual." Proof of this claim depends exclusively upon the accuracy of Tolley's recall. Tolley's admitted "haze," coupled with his changing version of events, raises serious questions regarding the accuracy of that recall. Consequently, the PDJ and Hearing Board cannot conclude by clear and convincing evidence that Mercer's conduct violated Colo. RPC 7.3(a) and therefore dismiss that charge.

■ Count two of the Complaint charges Mercer with violations of Colo. RPC 1.7(a) (a lawyer shall not represent a client if the representation of that client will be directly adverse to another client) and (b)(a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests) arising from his representation of both Moore and Tolley. The People contend that Mercer surreptitiously represented Tolley using Canaday as a straw man while simultaneously representing Moore on criminal charges arising out of the same factual events. It is undisputed that Mercer entered into a contingent fee agreement with Tolley and an attorney/client relationship came into existence. The existence of an attorney/client relationship is an element which must be established to prove a violation of Colo. RPC 1.7(a) or (b). It is not, however, the only element. Both Colo. RPC 1.7(a) and (b) are crafted in terms of "representation." Representation, as envisioned by those rules, is broader than the mere creation of the attorney/client relationship. It requires some affirmative act on the part of the lawyer to benefit the client. Whether Mercer engaged in affirmative acts on behalf of Tolley depends upon the analysis of credibility which is also implicit in the remaining counts of the Complaint.

Count three of the Complaint alleges a violation of Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) premised upon Mercer's representation to the Office of Disciplinary Counsel that he rescinded the Tolley contingent fee agreement on October 3, 1997. Mercer admits that he made such a statement.

Count four of the Complaint alleges that Mercer split legal fees with Strimbu and aided Strimbu in the unauthorized practice of law in connection with the Tolley matter in violation of Colo. RPC 5.4(a)(a lawyer or law firm shall not share legal fees with a nonlawyer) and 5.5(b)(assisting a person who is not a member of the Colorado bar in the performance of activity that constitutes the unauthorized practice of law), respectively. The splitting of legal fees is premised upon the People's contention that Mercer continued to represent Tolley through settlement of his claim, took the 35% contingency as authorized in the contingent fee agreement he and Tolley signed, and shared that contingent fee with Strimbu. The unauthorized practice of law claim is based upon the People's theory that Strimbu negotiated Tolley's claim directly with the insurance company without supervision while working with Mercer on that case.

The final count, count five, alleges that Mercer failed to assist Tolley in obtaining payment of all of his medical bills and therefore violated Colo. RPC 1.3 (neglect of a legal matter). As with the earlier claims, the determination of this count depends upon whether Mercer surreptitiously continued as Tolley's attorney as alleged by the People or rescinded the contingent fee agreement and handed the case over to Canaday as contended by Mercer.

With regard to counts two, three, four and five, the PDJ and one Hearing Board member conclude that the People have not proven by clear and convincing evidence that Mercer surreptitiously continued as Tolley's attorney as they contend. That conclusion is based upon the relative credibility of Canaday, Mercer, Strimbu and Ms. Tollerud. Canaday, Mercer and Strimbu all have vested interests in their respective version of events

and their perception of those events must be considered in light of their interests. Canaday's testimony was not credible: he testified that he voluntarily allowed Mercer and Strimbu to misuse his letterhead and deceive the insurance company, thus alleging that he was not Tolley's attorney while, at the same time, he admits that he financially participate in the settlement is not credible. Much of Canaday's testimony was internally inconsistent, at variance with common experience and contrary to the documentary evidence. Moreover, Canaday freely acknowledged that his involvement in this case was an effort to protect himself. The PDJ and one Hearing Board member give little, if any, weight to Canaday's version of events. Absent Canaday's supporting testimony, the People's contention that Mercer continued as Tolley's attorney must be inferred solely from the existence of the contingent fee agreement coupled with the fact that Mercer did receive some portion of the settlement proceeds. Those facts standing alone, in light of the explanations advanced by Mercer both as to the recession of the contingent fee agreement and the basis for his receipt of some portion of the settlement proceeds are insufficient from which to draw a conclusion by clear and convincing evidence that Mercer continued as Tolley's attorney beyond October 3, 1997. Although Mercer could not document Canaday's indebtedness to him, the lack of documentation goes to the weight to be given to the evidence and does not require that the evidence to be ignored.

Of substantial importance to this decision is the credible testimony of Ms. Tollerud. Ms. Tollerud is the only significant witness to the Tolley events who has no interest in the outcome of these proceedings. Her testimony is given significant weight in reaching the decision that Mercer did not continue as Tolley's attorney beyond October 3, 1997. Ms. Tollerud confirmed the letter had been prepared and sent to both Canaday and Tolley. She confirmed that Canaday regularly used Mercer's office, staff, telephone, forms and research resources. Of particular importance is her testimony that she did not prepare the Tolley settlement documentation, contrary to her normal duties in a Mercer

case, and that she performed no secretarial duties for Mercer in connection with that case after October 3 apart from referring Tolley's repeated phone calls to Canaday and Strimbu.

Absent substantially greater proof that Mercer continued in his representation of Tolley beyond the October 3, 1997 rescission letter, each of the charges in counts two, three, four and five must fail. Count two, the conflict of interest charges under Colo. RPC 1.7(a) and (b) require some showing that Mercer continued in his representation of Tolley and performed some affirmative act on Tolley's behalf. Absent Canaday's version of events, there is no evidence that Mercer did so. What remains is evidence that a lawyer entered into a fee agreement with a client, realized that a conflict may exist which had not been disclosed and promptly rescinded the fee agreement.[1] Although it would have been better for Mercer to consider the conflict issues *before* the contingent fee agreement was signed, under the facts of this case, his prompt rescission of the agreement and disclosure of the conflict is in accord with his responsibilities under Colo. RPC 1.7(a) and (b), not in violation of them.[2] Accordingly the charges contained in Count Two of violations of Colo. RPC 1.7(a) and (b) are dismissed. Because Mercer's representation to the Office of Disciplinary Counsel that he did not represent Tolley after October 3 has not been proven to be false at the time made, Count Three alleging a violation of Colo. RPC 8.4(c)(engage in conduct involving fraud, deceit, misrepresentation or dishonesty) is dismissed.

■ Count four alleging that Mercer split legal fees with Strimbu of necessity requires proof that the monies Mercer received were legal fees and that they were shared with Strimbu. The $25,000 in settlement of the

Tolley matter did result in a disbursement, after deduction of costs, of 35% of the remaining amount for legal fees. Because we have concluded that it has not been proven that Mercer continued as Tolley's attorney, that attorney fee disbursement is not attributable to Mercer.[3] Accordingly, Mercer could not have split a fee to which he was not entitled with Strimbu or anyone else. Consequently, the charged violation in count four of Colo. RPC 5.4(a) (a lawyer shall not share legal fees with a nonlawyer) is dismissed.

Count four also alleges a violation of Colo. RPC 5.5(b), assisting Strimbu in the unauthorized practice of law. That charge, like the prior ones, is premised upon the theory that Strimbu was working with Mercer on the Tolley claim and Mercer allowed Strimbu to engage in conduct which rises to the level of practicing law; namely, negotiating an insurance settlement without attorney supervision. Although the evidence reveals substantial participation by Strimbu in the handling of Tolley's claim through correspondence, he submitted his work to Canaday for review and Canaday signed the letters involved with one exception. As to that exception, Strimbu credibly testified that he discussed its content with Canaday prior to its transmittal. Under these facts, we cannot conclude by clear and convincing evidence that Strimbu acted without supervision nor that Mercer was charged with the responsibility of supervising his work. Accordingly, the charged violation of Colo. RPC 5.5(b) is dismissed.

The final count, count five, contends that Mercer neglected Tolley's legal matter because he did not "assist Mr. Tolley in obtaining payment of all of his medical bills" in violation of Colo. RPC 1.3. Since we have concluded that the evidence failed to prove that Mercer continued to represent Tolley

---

1. Neither party addressed the issue of whether an attorney can unilaterally rescind a fee agreement once executed. Accordingly, that issue is not addressed in this decision. This decision is based upon the assumption, not challenged by the People, that an attorney can unilaterally rescind a fee agreement in the face of an undisclosed conflict of interest.

2. To conclude otherwise would result in an automatic violation of Colo. RPC 1.7(a) and (b) any-

time a conflict arose during an attorney/client relationship.

3. No evidence was presented from which the basis for the 35% disbursement can be determined. Concluding that Mercer rescinded the contingent fee agreement with Tolley also requires the conclusion that the contingent fee agreement cannot be the basis for the disbursement. Canaday, however, never prepared a written fee agreement with Tolley.

beyond October 3, Mercer would have had no duty to pursue claims on Tolley's behalf after that date based upon the unchallenged enforceability of the October 3 rescission of the contingent fee agreement. Accordingly, the charged violation of Colo. RPC 1.3 in count five is also dismissed.

### Case No. 00PDJ037

The complaint alleges that Mercer violated Colo. RPC 8.4(d) as follows:

4. On June 29, 1998, the day she first met with the respondent, Ms. Waddell brought with her plane tickets that had been sent by Bradley Waddell for the children to accomplish their court-ordered summer visitation with him.

5. On June 29, 1998, the respondent mailed the plane tickets back to Mr. Waddell with a letter stating that the children would not be traveling to Georgia for their summer visitation, and inviting Mr. Waddell to engage in a dialogue concerning a revised visitation plan.

6. The respondent mailed the plane tickets to Mr. Waddell knowing that a Georgia court order was in effect which provided for the children's summer visitation with their father.

■ The alleged violation of Colo. RPC 8.4(d) is premised upon: (1) respondent's return of airline tickets provided to his client for court ordered visitation; (2) respondent's notice to the husband that the children would not be coming to Georgia for the court ordered visitation, and (3) respondent's request to engage in a dialogue concerning a revised visitation plan.

Colo. RPC 8.4(d) provides that "[i]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." In *People v. Hotle*, 35 P.3d 185, 190 (Colo. PDJ 1999), 29 COLO. LAW. 107, 108 (January, 2000) this court dismissed the alleged violation of Colo. RPC 8.4(d) against the respondent, stating:

No evidence was presented suggesting that [respondent's] misconduct, although related to a pending court proceeding,

prejudicially affected, delayed, interfered with or altered the course of that proceeding or, directly or indirectly, affected the administration of justice. A violation of Colo. RPC 8.4(d)(conduct prejudicial to the administration of justice), although covering a broad range of attorney misconduct, requires proof of some nexus between the conduct charged and an adverse effect upon the administration of justice.

*See also People v. Wright*, 35 P.3d 153 (Colo. PDJ 1999), 21 COLO. LAW. 154, 155 (September 1999)(finding a violation of Colo. RPC 8.4(d) for attorney's conduct which resulted in a direct disruption of pending proceedings); *People v. Mannix*, 936 P.2d 1285, 1287(Colo.1997)(finding a violation of Colo. RPC 8.4(d) where attorney failed to appear at criminal proceeding).

The People characterize respondent's conduct as assistance, support and facilitation of Waddell's violation of the visitation order. In order to find a violation of Colo. RPC 8.4(d), it must be determined by clear and convincing evidence that the return of the plane tickets, the notice to the father that the children were not coming or Mercer's invitation of dialogue, or some combination thereof, assisted, facilitated or supported the violation of the court visitation order.

The violation of the court visitation order arises from Ms. Waddell's failure to allow the children to travel to Georgia for visitation. At the time Waddell first contacted Mercer, she was already in violation of the Georgia court order and sought legal advice on what to do. Mercer advised her of the consequences of her withholding visitation and provided recommendations regarding a course of action to minimize any consequences if she persisted in her predisposition not to send the two children on the mandated visitation. Waddell ultimately authorized Mercer to undertake that planned course of action and elected not to send the children. Although the Complaint characterizes Mercer's involvement as assistance, facilitation or support for her decision to violate the order, the evidence does not support that conclusion.

It was Waddell's decision to violate the order. Mercer, as her attorney, was charged

with the obligation to inform her of the potential legal consequences of her intended course of action and did so. The fact that he took steps to minimize the potential consequences by returning the plane tickets, informing the husband that the children were not coming and inviting a dialogue does not further the client's decision to violate the order; rather, it does what lawyers are supposed to do, expend efforts to minimize the potentially negative consequences of the acts of their clients. *See generally* Colo. RPC 1.2. The conduct involved in this case is not of the same nature as those cases where lawyers have been found to have violated Colo. RPC 8.4(d) in connection with assistance provided to clients facilitating their violation of court orders. *See People v. Aron*, 962 P.2d 261, 263 (Colo.1998)(incompetent advice provided by an attorney and his client's resultant conduct while acting upon that advice resulted in prejudice to the administration of justice); *In the Matter of Kevin L. Scionti*, 630 N.E.2d 1358, 1360 (Ind.1994)(finding a violation of Prof. Cond. R. 8.4(d) where attorney advised his client to violate a court order setting forth the terms and conditions of visitation).

Colo. RPC 8.4(d) has historically been applied to situations involving the violation of court orders by attorneys. *See In re Bauder*, 980 P.2d 507, 508 (Colo.1999)(finding a violation of Colo. RPC 8.4(d) where attorney failed to obey a court order which required him to pay costs of a disciplinary proceeding); *In the Matter of Hugen*, 973 P.2d 1267, 1269 (Colo.1999)(finding a violation of Colo. RPC 8.4(d) where attorney continued to practice law while under suspension and failed to notify the courts, the clients or opposing counsel of the suspension); *People v. Harding*, 967 P.2d 153, 155 (Colo.1998)(finding a violation of Colo. RPC 8.4(d) for attorney's willful violation of a court order concerning the payment of disputed funds into a trust account during the pendency of an action against him by another attorney); *People v. Gonzalez*, 967 P.2d 156, 157 (Colo.1998)(finding a violation of Colo. RPC 8.4(d) where attorney failed to pay court-ordered maintenance and additional funds to former spouse resulting in a finding of contempt); *People v. Crist*, 948 P.2d 1020, 1021 (Colo.1997)(finding a violation of Colo. RPC 8.4(d) for attorney's violation of court orders in the course of abandoning his clients); *People v. Theodore*, 926 P.2d 1237, 1242 (Colo.1996)(finding a violation of Colo. RPC 8.4(d) where attorney drove his client at the client's request to the marital home in close proximity to the client's estranged wife who had obtained a permanent restraining order against the attorney's client); *People v. Primavera*, 904 P.2d 883, 885 (Colo.1995)(finding a violation of prior DR 1-102(A)(5) and Colo. RPC 8.4(d) for failing to pay court-ordered child support). The PDJ and Hearing Board cannot find by a clear and convincing standard based on the facts presented that Mercer's conduct assisted, supported, or facilitated Waddell's violation of the visitation order. Accordingly, the charged violation of Colo. RPC 8.4(d) in Case No. 00PDJ037 is dismissed.

### Dissent by FREDERICK Y. YU:

I respectfully dissent in part from the foregoing opinion and order dismissing the complaint in Case No. 00PDJ009. I concur with the portion of the opinion and order dismissing the complaint in Case 00PDJ037 (the Waddell case).

### Case No. 00PDJ 009

### The Tolley Case

The opinion characterizes the case as resting upon an assessment of the credibility of the witnesses who testified. I agree. After weighing the documentary evidence and testimony, I conclude, instead, that Mr. Mercer was not credible and that the documentary evidence in the record, supported by Mr. Canaday's testimony is the only credible explanation for the undisputed sequence of events that occurred.

Mr. Mercer represented Mr. Moore on criminal charges arising out of his automobile accident in which Mr. Tolley suffered injury as a passenger. Given this fact, it was a conflict of interest for Mr. Mercer also to represent Mr. Tolley, Mr. Moore's passenger, in a claim against Mr. Moore (or his insurer) seeking recovery for his injuries. Mr. Tolley's significant physical injuries and

substantial hospital and medical bills made it easy for Mr. Tolley to claim the policy limits available under Mr. Moore's uninsured motorist coverage of $25,000. Notwithstanding this conflict, Mr. Mercer undertook to represent Mr. Tolley. There is no evidence that Mr. Mercer consulted with either client about the subject of conflict before undertaking to represent Mr. Tolley.

It is undisputed that Mr. Mercer and Mr. Tolley executed a contingent fee agreement dated October 3, 1997, for Mr. Mercer to represent Mr. Tolley against Mr. Mercer's client, Mr. Moore (Complainant's Exhibit 1). Nor is it disputed that Mr. Moore's insurer paid $25,000, the policy limits of Mr. Moore's uninsured motorist coverage, that this amount was disbursed in Mr. Mercer's office in November, 1997, and Mr. Mercer was paid $4,026.03 out of these proceeds (Complainant's Exhibit 4).

Mr. Mercer states that later in the day on October 3, 1997, upon reflection, he determined that he had a conflict and sent a letter dated October 3, 1997, rescinding the contingent fee agreement signed earlier that day (Complainant's Exhibit 2). However, Mr. Tolley testified that he did not receive the letter purporting to rescind the agreement. His testimony at trial questioned why he was paying Mr. Mercer a contingent fee if Mr. Mercer was not his attorney. On the face of Exhibit 1 appear the words "Rescinded 10/3/*98,*" (emphasis added), below which is what appears to be Mr. Mercer's signature. Therefore, on its face, Mr. Mercer's contingent fee agreement indicates that it was not rescinded until a year after Mr. Mercer's October 7, 1997 letter.

Mr. Mercer's response to the Supreme Court Disciplinary Counsel concerning the Tolley matter was dated October 13, 1998 (Complainant's Exhibit 13). In this response, Mr. Mercer told the Disciplinary Counsel that he had rescinded the contingent fee agreement, that he had referred Mr. Tolley to Mr. Canaday, and that whenever Mr. Tolley would call his office, he or his secretary, Ms. Tollerud would "redirect" Mr. Tolley to Mr. Strimbu or Mr. Canaday. Mr. Mercer said nothing in his response about the disbursement of the insurance proceeds

in his office or the fact that he had been paid a portion of these proceeds. In the penultimate paragraph of his response, Mr. Mercer wrote, "I've now shared with you the extent of my knowledge of the matter." Plainly, that statement to the Disciplinary Counsel's office was untrue.

The contingent fee agreement called for a fee equal to 35% of the total amount of the gross recovery. Mr. Mercer had a working relationship with an insurance adjuster, Jack Strimbu. Mr. Strimbu testified that his services were to be billed on an hourly basis. No statement from Mr. Strimbu itemizing his services on an hourly basis or his out of pocket expenses was ever offered or admitted into evidence. According to Mr. Canaday, he became involved in Mr. Tolley's case at the request of Mr. Mercer. Mr. Mercer, according to Mr. Canaday, asked whether he would like to make some money. In return for a flat fee of $800, Mr. Canaday lent his letterhead, his trust account, and his name to the Tolley case. Mr. Strimbu authored letters on Mr. Canaday's letterhead (Exhibits 5 and 9). Mr. Mercer, not Mr. Canaday, actually signed one of the letters on Mr. Canaday's behalf (Complainant's Exhibit 5). These letters to the insurance company for Mr. Moore established the basis for Mr. Tolley's claim. At the time that he did this, Mr. Canaday was a newly minted lawyer who was struggling financially. He had sat unsuccessfully for the bar examination several times before finally passing. He had had little experience practicing law, and conducted any practice of law out of his house or Mr. Mercer's office. He looked to Mr. Mercer, a law school classmate, for guidance in how to practice law and for access to clients. In short, Mr. Canaday depended upon Mr. Mercer for advice and benefit and did not exercise independent judgment as an attorney at the time the proposal to become involved in the Tolley case arose.

In due course, the insurance company, confronted with the evidence of Mr. Tolley's extensive injuries, paid the policy limits of $25,000. The disbursement of these funds took place at Mr. Mercer's office, not at Mr. Canaday's. The checks were disbursed as follows:

$16,089.82    To Mr. Tolley. This represented exactly 65% of the settlement less $160.18 in costs. An itemization of these costs and the breakdown of the settlement proceeds was provided to Mr. Tolley on Mr. Canaday's letterhead (Complainant's Exhibit 3).

$ 8,750.00    The balance equaled 35% of the gross settlement proceeds. Of the $8,750.00 the fee was split in the following ways:

| Jack Strimbu | $4,084.15 |
| Craig Mercer | $4,026.03 |
| Lawrence Canaday | $ 800.00 |

There was no evidence as to whom the $160.18 in expenses was paid.

Mr. Canaday had no contingent fee agreement with Mr. Tolley. Mr. Tolley testified that he had never met Mr. Canaday until the closing. Mr. Tolley also testified that he did not understand that anybody except Mr. Mercer was his attorney.

Mr. Mercer testified that the money paid to him out of the Tolley settlement was for a debt that Mr. Canaday owed him for office supplies and other support provided to Mr. Canaday while he was learning the ropes of practicing law. No bill was ever prepared or presented to Mr. Canaday, and Mr. Canaday denied that he had incurred a formal debt to Mr. Mercer. The insistence by Mr. Mercer and Mr. Strimbu that Mr. Canaday was the attorney for Mr. Tolley earning a contingent fee is inconsistent with the $800 flat fee paid to Mr. Canaday out of the settlement. The payment and computation of the disbursement amounts, to the odd penny, to Mr. Mercer and to Mr. Strimbu, and the absence of any billing by either Mr. Strimbu or Mr. Mercer to Mr. Canaday to support their testimony, that the payment out of the settlement proceeds represented the discharge of hourly billings for services (in the case of Mr. Strimbu) and the payment of debt for accumulated office services (in the case of Mr. Mercer), indicates that Mr. Mercer and Mr. Strimbu continued to be the true beneficiaries of the contingent fee agreement with Mr. Tolley. Mr. Canaday's nominal presence as counsel for Mr. Tolley and the use of his trust account was intended to create the appearance, but not the substance, of representation of Mr. Tolley by Mr. Canaday.

Mr. Canaday's testimony was, in the opinion of this member of the Hearing Board, entitled to greater weight and credibility than Mr. Mercer. Mr. Canaday believed his testimony to be contrary to his own self interest in that he believed that he had participated in a fraud on the client and a fraud on the judicial system by lending his letterhead, his name and his trust account to Mr. Mercer and to Mr. Strimbu. In emotional testimony, he asked the Hearing Board not to take his license away. Mr. Canaday plainly regarded his license as a privilege for which he had sacrificed much and he saw himself as having risked his professional standing for a pittance in service of Mr. Mercer. When he testified, it was with the intention to make a clean breast of all of the events around the Tolley case, regardless of the personal consequences for him. By contrast, Mr. Mercer had a motive of self interest in his testimony.

Further, Mr. Canaday's testimony revealed him to be naïve in not only the practice of law, but personal injury practice. Any pretense that he was actually representing Mr. Mercer as a knowledgeable attorney, or that he could have done so without Mr. Strimbu is inconsistent with Mr. Canaday's limited experience and his own self assessment. Mr. Canaday was used as a puppet in this transaction. If his role was not concealed from Mr. Tolley until the date of the disbursement of the funds, Mr. Mercer attempted to do so in his interactions with the disciplinary prosecutor's office.

Contrary to the acceptance by the majority of the Hearing Board of Mr. Mercer's veracity, I believe that the foregoing facts compel the conclusion that Mr. Mercer undertook the representation of Mr. Tolley pursuant to a contingent fee agreement, that this representation was in conflict with Mr. Moore, that neither client was advised of this fact, that the agreement was not effectively rescinded, that Mr. Mercer prepared the rescission letter later and covered up the fact that he had, in fact, taken a contingent

fee from Mr. Tolley's recovery and shared it with Mr. Strimbu. I would find that the Complainant has proved their case by the requisite clear and convincing standard with respect to Counts II, III and IV of the amended complaint. I concur on the dismissal of Counts I and V for lack of proof.

### III. ORDER OF DISMISSAL

No charge having been proven by clear and convincing evidence, it is therefore Ordered that all charges and counts in Case No. 00PDJ009 and Case No. 00PDJ037 are DISMISSED.